IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2010

## STATE OF TENNESSEE v. JOHN HALL

**Direct Appeal from the Circuit Court for Cocke County**
**No. 0343     Ben W. Hooper, II, Judge**

_____

**No. E2009-02325-CCA-R3-CD Filed March 22, 2011**

_____

A Cocke County Circuit Court Jury found the appellant, John Hall, guilty of assault, a Class A misdemeanor. The trial court imposed a sentence of eleven months and twenty-nine days, thirty percent of which the appellant would be required to serve in the county jail. On appeal, the appellant challenges the sufficiency of the evidence and the sentence imposed by the trial court. Upon review, we affirm the judgment of the trial court but remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Thomas V. Testerman, Newport, Tennessee, for the appellant, John Hall.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; James B. Dunn, District Attorney General; and Tonya Thornton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On March 6, 2007, the appellant was charged by presentment with the aggravated assault of the victim, Adam Hampton. At trial, Shannon Massey Holt, Nicholas Charles Lewis, Rita Hammitt, Allison Lovell, and the victim testified for the State regarding the events which transpired on August 20, 2006. Holt, Lewis, Hammitt, and Lovell testified that

they worked together at a Cracker Barrel restaurant on Cosby Highway in Newport. Around 10:00 p.m. on the evening in question, Holt, Lewis, and Lovell had just gotten off work and were in the parking lot of the restaurant. Hammitt said that she had not worked that evening but that she and her boyfriend, the victim, came to the restaurant to give a friend a ride home.

Lovell testified that she noticed Holt was upset. Holt told Lovell that she was crying because she had been arguing with her boyfriend. While the two women talked, the appellant, who was Lovell's boyfriend, drove into the parking lot. The appellant approached Lovell and demanded to know why she had not answered his telephone calls. Lovell explained to the appellant that she was not allowed to take calls while she was working. Holt testified that the appellant was "agitated" and was cursing Lovell. Holt told the appellant to leave Lovell alone. Holt said the appellant raised his arm and told her, "I'm going to pimp smack you, ho."

Holt, Lovell, Lewis, and Hammitt recalled that after the appellant threatened to "smack" Holt, the victim told the appellant he should not talk to the women that way. Holt, Lovell, Lewis, and Hammitt testified that the victim did not approach the appellant but that the appellant approached the victim and used his fist to strike the victim once in the jaw. Holt, Lovell, Lewis, and Hammitt said the victim then fell to the ground. Hammitt also noted that the blow had enough force to knock the victim out of his shoes. The State's witnesses maintained that the victim never attempted to hit the appellant. After striking the victim, the appellant left.

The victim, who was twenty-seven years old, 5'9" tall, and weighed 155 pounds, testified that at around 10:00 p.m. on August 20, 2006, he was talking with Hammitt and other friends in the Cracker Barrel parking lot. He saw the appellant arrive and approach Lovell. The appellant cursed at Lovell, and Holt told the appellant that he should not talk to Lovell in that manner. The victim stated that in response, the appellant said, "Somebody better get this bitch before I slap this ho."

The victim said the appellant's comments bothered him because he "grew up for years watching [his] dad beat on [his] mom, and [he] wasn't going to see another man hit on a woman." Therefore, he told the appellant that "if he smacked [Holt], then [the victim] and [the appellant were] going to have a problem." The victim said he was not trying to start a fight but was trying to keep a fight from happening. Although the victim did not believe there would be an altercation, he removed his glasses in case he had to physically defend the women. The victim said that as he looked for Hammitt to ask her to hold his glasses, the appellant approached from behind and struck him. The victim testified that he was knocked to the ground and that the appellant stood over him, making "fun of the fact that he knocked

me out of my shoes." The victim asserted that did not attempt to hit the appellant, either before or after the blow to his jaw. Afterward, the appellant left the parking lot.

The victim stated that although his jaw did not hurt much immediately after the blow, it became extremely painful within an hour. He went to the emergency room in Newport, and x-rays revealed that his jaw was broken on both sides of his face. The victim was transferred to a hospital in Knoxville where he had surgery, during which a plate was put in his jaw and his mouth was wired shut. The victim later had an asthma attack with severe coughing which caused the plate to break. The victim underwent a second surgery during which a larger plate was attached to his jaw. The victim stated that his jaw was wired shut for approximately four months following the incident and that he could not eat for six months. He said that he has a scar on his neck from the surgery and that he grew facial hair to hide the scar because it was embarrassing.

The parties stipulated that the victim's injuries satisfied the element of serious bodily injury required for an aggravated assault conviction. Thereupon, the State rested its case-in-chief.

The appellant testified that on the night of the offense, he went to Cracker Barrel to see his girlfriend, Allison Lovell. When he arrived, he saw Lovell and Holt in the parking lot. Lovell was crying. The appellant became frustrated and asked her, "Why the F are you crying?" Lovell did not respond to the appellant's question, but Holt told the appellant that Lovell would not be crying if he treated her better. The appellant said that he and Lovell were arguing and cursing and that he told Holt to "shut the f[***] up and mind her own GD business."

The appellant said the victim told him that there would be trouble if the appellant did not "watch his mouth." The appellant said the victim began walking toward him while taking off his glasses and "ball[ing] up" his fist. The appellant thought the victim was going to attack him. However, the appellant, who was 6'4" or 6'5" tall and weighed 215 or 220 pounds, acknowledged that he did not fear that the victim would kill or seriously injure him. The appellant said that he hit the victim once in the jaw but that he did not hit the victim as hard as he could have. The appellant said he then left the parking lot.

Based upon the foregoing evidence, the jury found the appellant guilty of the lesser-included offense of simple assault and imposed the maximum fine of $2,500. At the sentencing hearing, the trial court imposed a sentence of eleven months and twenty-nine days, thirty percent of which the appellant would be required to serve in the county jail. On appeal, the appellant challenges the sufficiency of the evidence and the sentence imposed by the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant was originally charged with aggravated assault, which is an assault in which the offender causes serious bodily injury to another. Tenn. Code Ann. § 39-13-102(a)(1)(A). Aggravated assault as charged in the instant case is a Class C felony. Tenn. Code Ann. § 39-13-102(e)(1). However, the jury acquitted the appellant of aggravated assault and found him guilty of the lesser-included offense of simple assault, a Class A misdemeanor. See Tenn. Code Ann. § 39-13-101(b)(1). An assault is committed when an offender "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1).

The appellant argues that the jury's decision to find him guilty of misdemeanor assault, despite the stipulation that the victim suffered serious bodily injury, reflects that the jury "either misunderst[oo]d the instructions given by the trial court and/or acted arbitrarily and capriciously." The appellant also argues that the proof at trial demonstrated that the appellant acted in self-defense and that the jury erred in rejecting this defense. Both of the appellant's arguments are unavailing.

First, we note that although the parties stipulated that the victim suffered serious bodily injury, the jury was not bound by the stipulation. Our supreme court has observed that

> [a]lthough not controlling law, the Tennessee pattern jury
> instructions for civil cases require the jury to regard stipulated
> facts as proven; however, there is no such provision in the

-4-

> Tennessee pattern jury instructions for criminal cases. Moreover, under federal practice, stipulations support the existence of a fact, but do not necessarily prove the fact conclusively . . . .

State v. Saylor, 117 S.W.3d 239, 249 n. 8 (Tenn. 2003) (citation omitted).

Further, self-defense is a fact question for the jury. State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Tennessee Code Annotated section 39-11-611(a) provides that the use of force may be justified when a person has a reasonable belief that there is an imminent danger of death or serious bodily injury. In the instant case, the appellant testified that although he feared the victim was going to hit him, he did not believe he was in imminent danger of death or serious bodily injury.

The jury, as was its prerogative, chose not to credit the appellant's claim of self-defense. However, as the trial court noted, the jury chose to disregard the stipulation regarding the victim's serious bodily injury and instead found the appellant guilty of misdemeanor assault. The proof adduced at trial supports this verdict. The appellant is not entitled to relief on this issue.

### B. Sentencing

Finally, the appellant contends that the trial court erred in not granting him a sentence of full probation. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Appellate review of misdemeanor sentencing is de novo with a presumption of correctness even if the trial court failed to make specific findings on the record. See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In misdemeanor sentencing the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." Id. Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. See State v. Johnson,15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court retains the authority to place defendant on probation immediately or after a time of confinement. See Tenn. Code Ann. § 40-35-302(a). In sentencing a misdemeanor defendant, the trial court must fix a percentage of the sentence, not to exceed seventy-five percent, that the defendant must serve in confinement before being eligible for release into rehabilitative programs. See Tenn. Code Ann. § 40-35-302(d).

In the instant case, the trial court sentenced the appellant, a standard Range I offender, to eleven months and twenty-nine days and ordered the appellant to serve a minimum of thirty percent of the sentence in the county jail. An appellant seeking full probation bears the burden of establishing his suitability for full probation, regardless of whether he is considered a favorable candidate for alternative sentencing. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see also Tenn. Code Ann. § 40-35-303(b). To prove his suitability, the appellant must establish that granting full probation will "subserve the ends of justice and the best interest of both the public and the [appellant]." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (internal quotation marks and citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 8 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477.

The trial court found that the appellant's claim of self-defense was not credible. The court stated that the appellant acted "out of absolute control, us[ing] way beyond or more force than was necessary." The court found that the appellant "seized an opportunity to show how big and strong and mean [he was] and knocked the ever-living daylights out of [the victim." The court observed that the blow had enough force to break both sides of the victim's jaw. Moreover, we note that at the sentencing hearing, the appellant said, "I'm not

sorry, but I do feel bad." The court, exercising the wide latitude it has in misdemeanor sentencing, found that the offense was egregious enough to warrant the appellant serving a portion of his sentence in confinement. The record reflects that the trial court followed statutory procedure, carefully considered the principles of sentencing, and acted within its authority when sentencing the appellant. The appellant is not entitled to relief on this issue.

However, we note that the percentage to serve in confinement was outlined in the "special conditions" portion of the judgment, which stated that the appellant's sentence was "11/29 to serve @ 30%." This notation is problematic. The judgment of conviction form provides a place to mark the amount of time to be served prior to eligibility for release on probation. See Tenn. Code Ann. § 40-35-302(e). Additionally, the form provides a place to designate the percentage a misdemeanor offender is to serve in confinement prior to eligibility "for work release, furlough, trusty status and rehabilitative programs." See Tenn. Code Ann. § 40-35-302(d). In the instant case, neither of those provisions was marked. Therefore, we conclude that we must remand to the trial court for an entry of a proper judgment, on which the percentage of the sentence to be served in confinement prior to eligibility for release should be marked in the correct section specifically provided on the judgment form.

### III.  Conclusion

Upon concluding that the evidence is sufficient to sustain the appellant's conviction and that the sentence imposed by the trial court is supported by the record, we affirm the judgment of the trial court but remand for entry of a corrected judgment.

 

_____
NORMA McGEE OGLE, JUDGE