STATE of Tennessee, Appellee,

v.

David IVY a/k/a Terry Turner, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

June 23, 1993.

William D. Massey, Memphis, for the appellant.

Charles W. Burson, Atty. Gen. and Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, John W. Campbell, Asst. Dist. Atty. Gen., Memphis, for State of Tennessee.

## OPINION

WADE, Judge.

The defendant, David Ivy, was convicted of two counts of aggravated assault. The trial court imposed Range I sentences of three and six years respectively. The sentences were ordered to be served consecutively. In addition to his challenge to the sufficiency of the evidence, the defendant complains that the trial court erred by refusing to provide instructions on self defense and by imposing excessive sentences.

We affirm the aggravated assault conviction resulting in the six-year sentence. We reverse the conviction resulting in the three-year sentence and remand for a new trial.

On November 26, 1990, Alvin Barringer and his wife, Nakita, were approached by the defendant in Pendleton Park in Memphis. The defendant spoke, then tried to hug Mrs. Barringer and "touch her behind." When Mr. Barringer, who knew the defendant as "Day Day," intervened, words were exchanged. The defendant asked if Barringer wanted "a bitch to get [you] killed."

The Barringers returned to their residence. An uncle, Maurice Brown, was the only other person present. Although the defendant did not follow them to their home, he arrived later and was accompanied by "10 or 15 friends." Barringer testified that he ordered the defendant to leave, picked up a tire iron, and stepped outside. He stated that the defendant, standing only two feet away from the porch, pulled out a pistol, took away the tire iron, and then struck him in the head with the pistol. As Barringer ran

into the house and began to call 911, he heard several shots coming through the front door.

Brown, who had been sitting in the living room, heard Barringer say he had been injured in a fight, was walking toward the door when the shots were fired. He suffered five bullet wounds and was hospitalized for approximately a month.

Barringer denied that he ever raised the tire iron toward the defendant. He required two stitches for his head wound.

William King, parked in front of the Barringer house at the time of the shooting, testified that he saw the altercation. He stated that the defendant took a hammer away from Barringer, hit him with his pistol, then fired five or six shots into the door after Barringer had run back inside. Police found five bullet holes in the front door. There were two spent 9 mm. shells in the front yard.

There were three witnesses for the defense. Frederick Howard, who denied knowing the defendant but had seen "him here and there," said that Barringer had tried to hit the defendant with a jack iron. The defendant, he said, then struck Barringer. He stated that the defendant had left the yard and the victims were in the house when the person he called "Pouchie" started shooting. The witness described "Pouchie" but did not know his real name. He testified that "Pouchie" had died in December.

Calvin Hobson testified that he was standing across the street when the incident occurred. He stated that he saw a man come from the house and swing a jack iron at the defendant. The defendant pushed it back towards him and hit him. The witness testified that Brown ordered the defendant to leave and threatened "Pouchie." The door was closed. Shots were fired and "Pouchie" stood there with a gun.

Darwin Banks also testified. He stated that he saw someone try to hit the defendant with a jack iron then return to his house. When the door was closed, a man named "Pouchie" pulled a gun and started shooting.

■ The defendant initially claims that the evidence of identification was insufficient and that the state's witnesses were not credible. He argues that the jury verdict is based upon speculation. We do not agree.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of any conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim.App.1978).

The jury in this case chose to accredit the testimony of the prosecution witnesses. That was their prerogative. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). There is evidence to support each conviction. A rational trier of fact could have found the essential elements of each aggravated assault. The statutory definition of this crime, among other things, is defined as follows:

(a) A person commits aggravated assault who:

(1) commits an assault as defined in § 39-13-101, and:

(A) causes serious bodily injury to another; or

(B) uses or displays a deadly weapon.

An assault may be committed when one "intentionally, knowingly or recklessly causes bodily injury to another" or "intentionally or knowingly causes physical contact with another" in an offensive or provocative manner. Tenn.Code Ann. § 39-13-101. Barringer testified that the defendant struck him in the head with a weapon and that the injury required medical attention. Brown testified that the defendant walked towards the door with a gun in his hand. Almost immediately afterwards, Brown was shot five times. An eye witness testified that the defendant struck Barringer with a pistol then fired five or six shots into the residence. We hold that this evidence of the defendant's guilt of each crime more than satisfies the standard prescribed in Tenn.R.App.P. 13(e). *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781,

2792, 61 L.Ed.2d 560 (1979). Certainly, none of the elements of either of the crimes were left to speculation, guess, or mere possibility. *See Rucker v. State,* 174 Tenn. 569, 573–574, 129 S.W.2d 208, 210 (1939).

The defendant next argues that the trial court should have given instructions on self-defense with respect to the assault on Barringer. Witnesses for the defense stated that Barringer was injured as the defendant took a tire iron from him. Barringer admitted that he had the tire iron in his hand but testified that the defendant struck him in the head with a pistol. Upon inquiry by Brown, Barringer stated that his injury was the result of a fight. William King, a state's witness, testified as follows:

Q. What happened after he walked up to the yard?

A. After he walked up to the yard, they exchanged more words. And Alvin Barringer had a jack hammer in his hand and Day Day snatched the jack hammer from him and hit him in the head.

Q. Did you see what he hit him with?

A. Yes, sir.

Q. What did he hit him with?

A. A pistol.

The defendant cites *State v. Thompson,* 519 S.W.2d 789 (Tenn.1975), in support of his argument that the trial court had the responsibility to charge the law of self-defense. In *Thompson,* our Supreme Court held that it is the duty of the trial judge to give a complete charge of the law applicable to the facts of the case and that the defendant has a right for every factual issue in the evidence to be submitted to the jury. *Id.* at 792.

■ If a defendant has a genuine, well-founded fear that he was in danger of death or great bodily harm, self-defense is an available plea. *State v. Gilbert,* 612 S.W.2d 188 (Tenn.Crim.App.1980). The genuineness of his fear may be shown by surrounding circumstances. *Frazier v. State,* 117 Tenn. 430, 100 S.W. 94 (1906). The issue of self-defense is a matter for the jury to decide. If proven to the satisfaction of the jury, self-defense is a complete defense to crimes of violence. *Arterburn v. State,* 216 Tenn. 240, 391

S.W.2d 648 (1965); *Grainger v. State,* 13 Tenn. (5 Yerg.), 458, 462 (1830).

■ There may be alternative defenses. The defendant can, for example, rely on self-defense and accident when the evidence fairly raises both issues. *Drake v. State,* 576 S.W.2d 593 (Tenn.Crim.App.1978); 15 A.L.R. 4th 983 (1982). Reliance on self-defense is not limited to the exact moment of the assault that may be considered in connection with the entirety of the events leading to the assault. *See Allsup v. State,* 73 Tenn. 362 (1880).

Instead of addressing the issue with respect to the assault on Barringer, the state's brief addressed only the assault on Brown:

[E]very witness who observed the shooting ... testified that the shots were not fired until after Mr. Barringer had returned to his house and the door had been closed.... The trial judge held that a self-defense instruction was not warranted because the shooting "was not in response to any attack or out of any fear of death or great bodily harm being imminent." ... Clearly, the self-defense instruction was not warranted.

We cannot disagree as to the assault on Brown. The defense was one of mistaken identity. The assault on Barringer, however, presents a more difficult proposition. With respect to the shooting, the trial judge properly observed that "the initial confrontation with the tire iron was over and the victims had retreated, had turned and gone back to their house and the others were leaving as well." Later, however, defense counsel summarized his position:

I understand, but the whole gist of where we've come with this is with the pistol. It's Mr. Ivy's contention, of course, that he didn't have the pistol. So a self-defense is not warranted there.

However, if the jury found, and they might, that the crow bar, which [the prosecutor] introduced into evidence, is a dangerous weapon and it has caused him serious bodily harm, because he had two stitches in his head, they may think it was [the crow bar] that caused the stitches instead of the gun.

When the trial court indicated that it might charge self-defense as to Barringer's assault, the prosecutor expressed concern about possible confusion. That is, that Barringer may have had rights to order the defendant from his property and to enforce that with the use of a weapon. The trial court then ruled that the facts did not warrant the charge of self defense as to the assault on Barringer.

 We disagree. Self-defense was fairly raised by the testimony of each of the three defense witnesses. King, a state's witness, gave testimony favorable to a self defense claim. We conclude that it should have been charged to the jury. When the proof "tends to show" self-defense, it is error to fail to give the instruction. *Souey v. State*, 81 Tenn. 472 (1884). Instructions to the jury necessarily involve alternative applications of law directly dependent upon the resolution of the facts.

 In determining whether evidence fairly raises an issue, trial courts must assess the defendant's position without ascertaining its truthfulness or the weight to which it might be entitled. *State v. Dorrie Miller Currin*, No. 02C01–9201–CC–00018, 1992 WL 205276 (Tenn.Crim.App., Jackson, August 26, 1992). *See Potter v. State*, 85 Tenn. 88, 1 S.W. 614 (1886). The jury is to resolve the factual dispute and ascertain the applicable law.

From our review of the record, it is apparent that the trial court was not impressed by the quality of the defense witnesses' testimony. Moreover, the jury verdict implies a similar assessment. Nonetheless, three witnesses testified that Barringer's injury took place after he stepped towards the defendant with a tire iron in his hand. Under our law, "a person is justified in ... using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the ... use of unlawful force." Tenn.Code Ann. § 39–11–611. In order to qualify as a defense, there must be a reasonable threat to life or serious bodily injury. It must be

honestly believed to be real, and that belief must be based upon reasonable grounds. *Id.*

 Because the jury was not given the benefit of the instruction and denied the opportunity to evaluate the merit of the claim, we must reverse the conviction for aggravated assault against Barringer [1] and order a new trial. The defendant neither argues nor do we find that the evidence raised the issue of self-defense as to the aggravated assault on the victim Brown.[2]

Next, the defendant asserts that he should not have been ordered to serve six years for the aggravated assault on Brown. He contends that the trial court committed error by the imposition of consecutive sentences.

 Aggravated assault is a Class C felony. A Range I sentence qualifies for a term not less than three nor more than six years. Tenn.Code Ann. § 40–35–112. The six-year sentence is obviously within the range. Otherwise, this record is inadequate for us to determine the appropriateness of the maximum sentence. A transcript of the sentencing hearing was not included in the record. Because it is the duty of the appellant to prepare a record which includes the proceedings relevant to an issue on appeal, the doctrine of waiver applies. Tenn.R.App.P. 24(b); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim.App.1987). In the absence of a record adequate for review, this court must presume that the trial judge ruled correctly. *Herron v. State*, 3 Tenn.Cr.App. 39, 456 S.W.2d 873, 876 (1970).

In summary, the conviction and sentence of aggravated assault against Brown is affirmed. The aggravated assault conviction as to Barringer is reversed and remanded for a new trial; because the judgment has been set aside, the consecutive sentencing issue is moot at this time.

BIRCH, and WHITE, JJ., concur.

---

1. Indictment No. 91–02556.

2. Indictment No. 91–02557.