IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## STATE OF TENNESSEE v. KEWAN JACKSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-07016     J.C. McLin, Judge**

_____

**No. W2003-01917-CCA-R3-CD  - Filed June 25, 2004**

_____

The appellant, Kewan Jackson, was found guilty by a jury in the Shelby County Criminal Court of criminally negligent homicide and reckless aggravated assault.  The appellant received a total effective sentence of three years in the Shelby County Workhouse.  On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions and the refusal of the trial court to remove a juror.  Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Kevin E. Childress, Memphis, Tennessee, for the appellant, Kewan Jackson.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham and Vanessa King, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The appellant was indicted by the Shelby County Grand Jury for the voluntary manslaughter of Eric Burks and for the aggravated assault of Corinthiaus Daniels.  In the light most favorable to the State, the proof adduced at trial revealed that a party was held on July 7, 2001, at the After Dark Club on Austin Peay Highway in Memphis.  To prevent anyone from bringing drugs or weapons into the club, security personnel searched attendees prior to admittance.  Burks was the disk jockey (DJ) for the party.  Therefore, he arrived at the club early.  Daniels and Kevin Denton, friends of Burks, arrived at the club shortly after Burks.  Later in the evening, the appellant, another friend of Burks,

arrived at the club. Burks told security to let the appellant into the party without paying admission.

Daniels spent most of the evening on the dance floor, dancing by himself. Denton sat at a table near the DJ booth. The appellant entered the DJ booth with Burks. Daniels shouted at Burks, requesting that he change songs. However, because Burks was wearing a headset and the music was loud, he was unable to hear Daniels' request. Daniels then walked toward the DJ booth to personally make his request. The appellant was standing on the steps of the DJ booth. When Daniels reached the booth, the appellant walked off the steps and shoved or bumped Daniels with his right arm.

After the contact, the appellant reached into the waistband of his pants and withdrew a High Point ACP .45 caliber pistol. When Daniels attempted to grab the pistol, the appellant began firing multiple shots. Daniels was struck several times. Security personnel approached the men and attempted to stop the altercation. Both Daniels and the appellant fled outside. Daniels sought cover in an attempt to avoid further shots. The appellant fired again outside the club.

By the conclusion of the incident, Daniels had suffered a total of five gunshot wounds: one wound in his arm, one in his leg, one in his back, and two in his stomach. Daniels was hospitalized for three days as the result of his wounds. Additionally, Burks was killed by a gunshot wound inside the club.

Several attendees at the party, namely Daniels, Denton, Oderrial Moore, and Charlie Patterson, stated that the appellant was the only person at the club in possession of a gun. Consistently, the attendees maintained that the appellant "bumped" Daniels, then drew his weapon. Additionally, the attendees uniformly identified the appellant as the shooter.

Police at the scene discovered a High Point ACP .45 caliber pistol, spent rounds and cartridges, and live rounds. One of the bullets and one of the cartridges were identified as being fired from the High Point pistol. Moreover, the Medical Examiner retrieved a bullet from Burks' body, which bullet had been fired from the High Point pistol.

Contrastingly, at trial the appellant asserted that he came to the party at Burks' invitation. Daniels was "acting erratic" on the dance floor, swinging his arms and dancing wildly. Daniels looked toward the DJ booth and began cursing. Daniels approached the booth, uttered a racial slur toward the appellant, and moved his hand toward his waistband as if to reach for a weapon. The appellant withdrew his High Point ACP .45 caliber pistol to intimidate Daniels into retreating. Daniels grabbed the pistol and the appellant's hair. At that point, the appellant shot Daniels.

The two men struggled over the gun. Daniels had both hands on the appellant's gun. He turned the gun and shot the appellant in the arm. Eventually, security intervened. Daniels ran outside while the appellant stayed in the club. The appellant explained to security that he had a permit to carry the pistol. After the incident, the appellant went to his girlfriend's house. He was later taken by ambulance to the hospital where he was arrested.

Based upon the foregoing evidence, the jury convicted the appellant of the lesser-included offenses of criminally negligent homicide and reckless aggravated assault. At the sentencing hearing, the trial court found the appellant to be a standard Range I offender. The court imposed sentences of two years for the criminally negligent homicide conviction and three years for the reckless aggravated assault conviction. The trial court further ordered the sentences to be served concurrently. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions and the trial court's refusal "to excuse a juror who was familiar with a member of the victim's family."

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to prove that the appellant committed the criminally negligent homicide of Burks, the State was required to prove that the appellant engaged in criminally negligent conduct which resulted in Burks' death. See Tenn. Code Ann. § 39-13-212(a) (1997). Tennessee Code Annotated section 39-11-302(d) (1997) provides:

> "Criminal negligence" refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

"In other words, the accused must know, or should know, that his or her conduct, or the result of that conduct, will imperil the life of another given the circumstances that exist when the conduct takes place." State v. Adams, 916 S.W.2d 471, 474 (Tenn. Crim. App. 1995).

In the instant case, in the light most favorable to the State, the facts adduced at trial reveal that the appellant brandished a loaded .45 caliber pistol in a nightclub filled with other people. The appellant fired repeatedly into the small space, and one of the bullets struck Burks, killing him. The State's witnesses testified that the appellant was the only person in the club that night with a gun. Moreover, the State's witnesses also stated that the appellant was the only person in the club shooting a gun. We conclude that the appellant knew or should have known that his actions would "imperil the life of another given the circumstances that exist[ed] when the conduct [took] place." Adams, 916 S.W.2d at 474. Accordingly, this evidence is sufficient to support the appellant's conviction for criminally negligent homicide. See State v. Oneal Sanford, No. E1999-02089-CCA-R3-CD, 2001 WL 681312, at *4 (Tenn. Crim. App. at Knoxville, June 18, 2001).

In order to prove that the appellant committed the reckless aggravated assault of Daniels, the State was required to prove that the appellant recklessly caused bodily injury to Daniels while using or displaying a deadly weapon. See Tenn. Code Ann. §§ 39-13-101(a)(1) and 39-13-102(a)(2) (1997). Tennessee Code Annotated section 39-13-302(c) provides:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

In the light most favorable to the State, the proof at trial demonstrated that the appellant pointed his loaded pistol at Daniels, then he fired the weapon at Daniels. In fact, the appellant conceded that he shot Daniels. Daniels testified that he received five gunshot wounds and still bears scars from the wounds. Again, the appellant was the only person in the club that night with a gun. We conclude that this evidence is sufficient to sustain the appellant's conviction for reckless aggravated assault. See State v. Michael Lewis, No. W2001-03121-CCA-R3-CD, 2003 WL 1697689, at *4 (Tenn. Crim. App. at Jackson, Mar. 26, 2003).

The appellant's main complaint regarding the sufficiency of the evidence is the jury's rejection of his claim of self-defense. Tennessee Code Annotated section 39-11-611(a) (1997) provides:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the

force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.

Self-defense is essentially a question of fact to be determined by the jury. See State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). As such, "in the context of judicial review of the jury verdict, in order to prevail, the [appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." Clifton, 880 S.W.2d at 743.

The only proof at trial supporting the appellant's claim of self-defense was his self-serving testimony. The State's witnesses uniformly testified that the appellant "bumped" Daniels, then drew his gun. A struggle for control of the gun began, resulting in the shooting of Daniels and Burks. It is within the jury's prerogative to accept or reject a claim of self-defense. See State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). We conclude that the jury was well within its purview to reject the appellant's claim of self-defense.

## B. Juror Disqualification

As his final issue, the appellant argues that the trial court erred in refusing to excuse a juror who was familiar with a member of the victim's family. Generally, "[o]nce a jury is impaneled, jurors may be discharged from further service prior to deliberations only if found by the trial court to be 'unable or disqualified to perform their duties.'" State v. Cleveland, 959 S.W.2d 548, 551 (Tenn. 1997) (quoting Tenn. R. Crim. P. 24(e)(2)). The decision whether to discharge a juror and impanel an alternate juror rests within the sound discretion of the trial court. Id. As such, we will not disturb the trial court's decision absent an abuse of that discretion.

At trial, Burks' mother testified concerning Burks' non-violent nature. At the conclusion of her testimony, a juror informed the trial court that he recognized Burks' mother as the mother of his sister-in-law's ex-boyfriend. In other words, the juror told the court that he knew Burks' brother. The juror stated that he was not close friends with the victim's family; he simply knew them. The juror maintained that he did not realize he knew the family until he saw Burks' mother. He explained that Burks and his mother had a different surname than Burks' brother.

The appellant objected to the juror's continuing service on the jury. Upon questioning by the trial court, the juror stated, "I don't think it would have a bearing on my decision." Additionally, the juror repeatedly asserted that he could be fair and impartial, and he maintained that he would base his decision upon the evidence adduced at trial. The trial court, in its discretion, determined that the juror could be fair and impartial and refused to remove the juror. See State v. Bates, 804 S.W.2d

-5-

868, 878 (Tenn. 1991).  We conclude that the trial court did not abuse its discretion in refusing to remove the challenged juror.

### III.  Conclusion

Finding no error, we affirm the judgments of the trial court.

                                     _____
                                     NORMA McGEE OGLE, JUDGE