# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 8, 2012 Session

## STATE OF TENNESSEE v. GARY ALLEN CARLTON

**Appeal from the Criminal Court of Davidson County**
**No. 2010-A-129      J. Randall Wyatt, Jr., Judge**

**No. M2011-01152-CCA-R3-CD - Filed July 16, 2012**

Gary Allen Carlton ("the Defendant") was convicted after a bench trial of one count of impersonating a licenced professional and one count of violating the Home Improvement Contractors Licensing Act. After a hearing, the trial court sentenced the Defendant to an effective term of two years, with 120 days to be served and the remainder on probation. The Defendant has appealed, challenging the sufficiency of the evidence and his sentence. Upon our thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Rob McKinney, Nashville, Tennessee, for the appellant, Gary Allen Carlton.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was indicted on one count of impersonating a licensed professional, a home improvement contractor, see Tenn. Code Ann. § 39-16-302 (2006), and one count of operating a home improvement business without a license, a violation of the Home Improvement Contractors Licensing Act, Tenn. Code Ann. §§ 62-6-501 through -521 (2009) ("the Act"). The Defendant waived his right to a jury trial, and the trial court conducted a bench trial.

At trial, Carolyn Lazenby testified that she is the Executive Director of the Board for Licensing Contractors ("the Board").[1]  She explained that the Board oversees and regulates the construction industry.  She testified that she was familiar with the Defendant, and she identified him in court.  According to Lazenby, the Board had received several complaints about the Defendant and conducted a "formal hearing" in July 2009 ("the Hearing"), which she attended.  The Hearing concerned charges that the Defendant had been contracting without a contractor's license.  The Defendant was present at the Hearing.

Following the Hearing, the Board issued an order on September 8, 2009 ("the Order"). A copy of the Order was mailed by certified mail on September 9, 2009, to the Defendant at his work address in Nashville and to his home address in Eagleville.  The Order was admitted into evidence.  Lazenby testified that, in conjunction with the Hearing, the Board investigated whether the Defendant had ever held a Tennessee contractor's license.  She stated that they "could not find any record of him having a license."  The Order included a stipulation, however, that the Defendant had been licensed in 1988.  As a result of the Hearing, the Board assessed a civil penalty of $25,000 against the Defendant, payable over two years.  According to Lazenby, the Defendant had not paid any of the penalty as of the time of trial in February 2011.  The Board also ordered that the Defendant not apply for a license until six months after he had paid the penalty in full.

Lazenby also reviewed a copy of contractor's license number 60796 for Innovation Properties, LLC, issued in March 2008.  The owner of this license was Chip Ernest Carlton, the Defendant's nephew.  The Defendant was not listed as one of the company's employees.

On cross-examination, Lazenby acknowledged that the Board did not oversee home improvement contracts for all Tennessee counties.  Rather, only those counties that "opted in" were under the Board's jurisdiction.  As of the time of trial, nine counties had opted in. She also acknowledged that a general contractor license was different than a home improvement contractor license.  She agreed that persons performing home improvement jobs priced at $3,000 or less were not required to be licensed.  Moreover, persons who were employees or subcontractors of a licensed contractor were not required to be licensed themselves.

Lynn Salter testified that she lives in Davidson County.  In September 2009, she was seeking a contractor to replace her roof.  She found the Defendant through an advertisement on Craigslist.  The advertisement included a telephone number and license number 60242. When she called the number, she spoke with an individual who identified himself as Gary Carlton.  They scheduled a time to meet at Salter's house.

---

[1] See Tenn. Code Ann. § 62-6-104 (2009).

On September 25, 2009, Salter met the Defendant at Salter's house. Salter identified the Defendant in court. He gave her a business card, which identified the business as Roofing Right. The Defendant's name also appeared on the card. Additionally, the card stated "licensed, insured and dependable." Initially, the Defendant told her that he would start the job without a down payment. Later, however, he told her that he could "get started for $600." Salter specifically asked the Defendant if he was licensed, and he told her he was. She told him that she wanted to see a copy of his license.

During his meeting with Salter, the Defendant prepared a "proposal" for roofing Salter's house, dated September 25, 2009. The document was admitted into evidence. It identifies the company name as "Roofing Right." The phone number indicated was the same one provided on the Craigslist advertisement. The price of the job was $3,600, with $600 to be paid up-front and the remainder paid upon completion. The proposal was signed by the Defendant. The Defendant told Salter that the job would take one day and that "he used two men" to do the work. He assured her, however, that he "would be there the entire time helping and overseeing." Salter did not accept the proposal when the Defendant gave it to her, but told him that she needed to speak with her husband about it and that she needed to see the Defendant's license. The Defendant left the proposal with her and told her later that evening on the phone that she had five days to make a decision about whether to accept it.

According to Salter, the Defendant called her the next day to tell her that he would be faxing her a copy of his license. He assured her again that he was licensed. On September 29, she received a fax from the Defendant, including a cover letter and a copy of a business license from Williamson County. She called Williamson County and confirmed that it was not a contractor's license. When she spoke with the Defendant by phone and told him that she was asking for a contractor's license, he apologized and stated that he had sent the wrong thing, "but he would make sure [she] got it." On October 2, 2009, she got another fax from the Defendant, a copy of a license from the Board of Licensing Contractors issued to Innovation Properties. The license number was 60796. When Salter questioned the Defendant about the different company name, he told her "that Innovation Properties was another one of his [companies]." After conducting some independent research, Salter decided not to hire the Defendant.

On cross-examination, Salter acknowledged that she never gave the Defendant any money and that he never performed any work for her, other than bidding the job. She stated that he told her he was licensed in Davidson County. On questioning, she explained that the Defendant's brother, John Carlton, called her while she was waiting for another fax from the Defendant. The Defendant's brother told her that the Defendant "unexpectedly had to go out of town," but that he, the Defendant's brother, would honor the contract. By that time, however, she had decided that she did not want either the Defendant or his family to do the work.

John Carlton, the Defendant's brother, testified on behalf of the Defendant. He stated that he is a home builder and that he resides in Nashville. He explained that he is licensed by the State as a contractor under Destiny Enterprises, LLC. He and his son previously were licensed under Innovation Properties, LLC. He became involved in the proposal given to Salter because the Defendant "had acquired this job, but his limit was exceeded." The Defendant asked if John Carlton and John's son were interested in taking the job, and John said, "sure." John Carlton called Salter and told her he was the Defendant's brother, that they operated under different companies, but that he would honor the Defendant's contract with her.

On cross-examination, John Carlton explained that his son was the general contractor for Innovation Properties. He also stated that he was aware that the Defendant operated under the name Roofing Right. Roofing Right was not John Carlton's company, and he was never involved in it in any way. When the Defendant prepared the written proposal for Salter, he was operating on Roofing Right's behalf and not on Innovation Properties' behalf.

John Carlton testified that he was not aware of the Order entered against the Defendant in September 2009. He had not been a witness or otherwise involved in that proceeding. The Defendant had not told him about the Order. He was unaware of the proceedings at the time he spoke with Salter.

The Defendant testified and, when asked what he was currently doing for work, stated, "Right now I am disabled." He explained that, at the time period in question, he was licensed to do home improvements in counties that had not opted in and also was licensed in Davidson County so long as the job did not exceed $3,000. He further explained that the real price on the Salter job was $3,000 because he was going to use $600 worth of materials that the Salters already had. He stated that he had never held himself out as having a State license for home improvement.

The Defendant explained that he intended for one of his family members to actually do the job because "[n]umber one, [he] had to go out of town; and number two, so there would be no discrepancy [he] just told [his] brother go ahead and take that job, because [he] cannot do it right now." He also explained that he decided to get out of the business because he had received the Order from the State Board and did not want further "conflicts."

On cross-examination, the Defendant admitted to pleading guilty in March 2008 in Davidson County to a misdemeanor violation of the home improvement contractors law and to pleading guilty in December 2008 in Rutherford County to a misdemeanor violation for attempting to impersonate a licensed professional. He reiterated that he was licensed to operate as a home improvement contractor. As such, he could "do any contract up to $25,000 in all counties except for nine counties." In those nine counties, including Davidson

-4-

County, he could not do a contract over $3,000. He stated that he learned that information at the Hearing in July 2009. He acknowledged that he was not licensed as a home improvement contractor by the State and that Davidson County required such licenses for jobs over $3,000. He also acknowledged that he knew Salter's house was in Davidson County.

The Defendant testified that he did not receive the Order until after he met with Salter. He also testified that the $600 to be paid before work began on the Salter job was to be paid in their materials. He explained that the proposal he wrote did not make mention of this arrangement but that, if the Salters accepted the proposal, the contract would be written to reflect the payment in materials. Accordingly, he understood the actual contract price to be $3,000.

When shown the Williamson County business license that he provided to Salter, the Defendant explained that it was his "home improvement license per se in Williamson County." When Salter told him that it was not acceptable, he faxed her the license for Innovation Properties. He explained: "I told my brother I was going to have to go out of town and I couldn't do it anyway so I would fax his license over and for him to talk to her and deal with it."

After hearing this proof, the trial court took the matter under advisement and subsequently issued a comprehensive order in which it found the Defendant guilty of both counts as charged.

At the sentencing hearing held later, Salter testified and reiterated briefly what had occurred. She acknowledged that she never paid the Defendant any money. Sergeant Brink Fidler of the Metro Police Department testified that he attempted a "reverse sting" on the Defendant in May 2010 by trying to reach the Defendant by phone and have him provide an estimate for home repairs to Sgt. Fidler's house, which had been damaged in the May flood. Although he spoke with someone over the phone whom he assumed was the Defendant, the individual never followed up on setting up a meeting for providing an estimate. Rhonda Sanders testified that she and her husband, residents of Davidson County, contracted with the Defendant in 2006 to do some remodeling at their home, including a roof replacement. Although she thought the Defendant was licensed, based upon his advertisements and business card, she later discovered that he was not. Sanders testified that they had paid the Defendant over $15,000 before the discovery. At that point, they refused to allow the Defendant to continue the job. They subsequently filed a police report on the incident, but the case was not prosecuted by the district attorney's office. Sanders attended the instant trial and, afterwards, found home improvement advertisements on Craigslist with the Defendant's phone number.

The transcript of the sentencing hearing also indicates that the prosecutor asked that the presentence report be made an exhibit. The defense lawyer responded that certain information in the report regarding the Defendant's probation was incorrect and stated that he would late-file exhibits demonstrating the correct information. The defense did not object to the admission of the report. However, the record on appeal contains neither the presentence report nor any late-filed exhibits.

The trial court again took the matter under advisement and subsequently issued a comprehensive order sentencing the Defendant as a Range I, standard offender to one year and six months on his conviction of impersonating a licensed professional, a Class E felony,[2] and to six months on his conviction of violating the Act, a Class A misdemeanor.[3] The trial court ordered the sentences to run consecutively. As to manner of service, the trial court ordered the Defendant to serve 120 days at Corrections Corporation of America with the balance of the sentence on probation.

In this appeal, the Defendant challenges the sufficiency of the evidence supporting both convictions and his sentence.

**Analysis**

*Sufficiency of the Evidence*

Our Rules of Appellate Procedure provide that "[f]indings of guilt in criminal actions whether *by the trial court* or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e) (emphasis added). In applying this standard of review, the determinative inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See, e.g., State v. Victor Wayne Browning, No. M2009-00509-CCA-R3-CD, 2010 WL 877523, at *4 (Tenn. Crim. App. Mar. 12, 2010) (applying Jackson v. Virginia in challenge to sufficiency of the proof following bench trial).

Once the trier of fact finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the verdict. State v. Tuggle, 639 S.W.2d 913, 914

---

[2] See Tenn. Code Ann. § 39-16-302(b).

[3] See Tenn. Code Ann. § 62-6-512.

(Tenn. 1982). This Court does not weigh the evidence anew; rather "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992) (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

## Impersonating a Licensed Professional

The Defendant was convicted of one count of impersonating a licensed professional. Tennessee Code Annotated section 39-16-302 provides that "[i]t is unlawful for any person who is not licensed to do so, to practice or pretend to be licensed to practice a profession for which a license certifying the qualifications of the licensee to practice the profession is required." Tenn. Code Ann. § 39-16-302(a). Four elements must be proven beyond a reasonable doubt to establish this offense: (1) the defendant practiced, or pretended to be licensed to practice, as a certain professional; (2) the profession at issue is a profession in the State of Tennessee requiring a license certifying the qualifications of such licensee to practice; (3) the defendant was not licensed to practice the profession in Tennessee; and (4) the defendant acted intentionally, knowingly, or recklessly. See T.P.I. - Crim. 24.03 (13th ed. 2009); State v. Alberto Camacho, No. E2005-02699-CCA-R3-CD, 2007 WL 3145003, at *7 (Tenn. Crim. App. Oct. 29, 2007).

In this case, the trial court found that the Defendant had pretended to be a licensed home improvement contractor. In support of this finding, the trial court relied on proof that the Defendant held himself out as "licensed" on Craigslist, that he gave Salter a business card during their meeting that indicated the Defendant was "licensed," that Salter testified that the Defendant reassured her verbally that he was licensed, and that he faxed to her a copy of his Williamson County business license for a job in Davidson County.

As to the second element, the trial court found that Davidson County had "elected in 1994 to make [state] statutory provisions governing home improvement contractors applicable within the county. Metro Gov't of Nashville and Davidson County, Resolution No. R94-1073." Accordingly, the trial court found, "home improvement contracting is a profession requiring a license in Davidson County, Tennessee."

The trial court also found that the Defendant was not licensed by the Board as a home improvement contractor, noting the Defendant's admission of this point. And, as to the fourth and final element, the trial court found that the Defendant "at least" had acted recklessly. In this regard, the trial court noted the Defendant's attendance at the July 2009 Hearing and, additionally, found it "highly unlikely" that the Defendant had not received the Order prior to the Defendant's meeting with Salter.

The Defendant argues in his brief to this Court only that, "[i]n the instant case, the area is gray. A license is not needed for providing a service for the sum of Three Thousand Dollars ($3,000) or less. [The Defendant] did not practice or perform the duties as a licensed professional. [The Defendant] did not pretend to be a licensed professional and in fact, worked as a subcontractor for his brother."

We are not persuaded. The record supports the trial court's finding that the Defendant held himself out to Salter as willing and able and "licensed" to perform a job in Davidson County that he priced at $3,600, over the $3,000 limit applicable to non-licensed home improvement contractors operating in Davidson County. He did not attempt to refer the job to his brother until it became clear that Salter was going to insist on seeing a license he did not have. That Salter was wise enough to not accept the Defendant's proposal does not exonerate the Defendant from his actions in holding himself out as licensed to perform a job that he, in fact, was not licensed to perform. The evidence is sufficient to support the Defendant's conviction of impersonating a licensed professional. Therefore, this issue is without merit.

## Violating the Act

The Defendant was also convicted of one count of violating the Act. In order to analyze the sufficiency of the evidence supporting this conviction, we will examine several definitions under the Act.

A "home improvement" is defined to include roofing a residence, see Tenn. Code Ann. § 62-6-501(4)(A), excluding, however, roofing jobs "for which the contract price is three thousand dollars ($3,000) or less," id. § 62-6-501(4)(B)(ii). The roofing job which the Defendant proposed to provide to Salter was priced at $3,600. The Defendant therefore proposed to perform a home improvement included within the coverage of the Act.

A "home improvement contractor" is defined as "any person, other than a bona fide employee of the [homeowner], who undertakes or offers to undertake or agrees to perform any home improvement for the [homeowner], whether or not the person is licensed or subject to the licensing requirements of this chapter." Id. § 62-6-501(6). The Defendant offered, on his own behalf as the proprietor of his company Right Roofing, to undertake replacing

Salter's roof. The Defendant was therefore acting as a home improvement contractor within the coverage of the Act.

As to violations of the Act, Tennessee Code Annotated section 62-6-502 provides as follows:

(a) No person may engage in or transact any home improvement business, represent to the public as doing home improvement business or *offer to transact any home improvement business in this state*, except in compliance with the applicable provisions of this part. No person, whether subject to licensing by any law or otherwise, may engage in this state in any trade practice or other act that is prohibited by this part. Every person who willfully participates in a prohibited act or violation with knowledge of the prohibited act or violation is subject to the criminal penalty for the prohibited act or violation. . . .

(b)(1) No person shall maintain, own, operate or transact a home improvement business unless a license is first obtained as prescribed in this part.

Tenn. Code Ann. § 62-6-503(a), (b) (emphasis added). Additionally, section 62-6-512 provides as follows:

Any person who owns, operates, conducts a home improvement business or procures a home improvement contract without a license pursuant to this part or who violates any of the provisions of this part, or having had a home improvement contractor's license suspended or revoked continues to engage in the business, commits a Class A misdemeanor.

Tenn. Code Ann. § 62-6-512.

The trial court found that the Defendant had offered to provide a home improvement to Salter. The trial court also found that the price of the home improvement was $3,600. The trial court rejected the Defendant's claims that he was going to ensure that the contract was lawful by lowering the contract price to $3,000 in return for using $600 of the Salters' materials, that he was going to allow his brother to perform the contract to avoid "discrepancies," and that he could not complete the work because he had to leave town.

The Defendant's argument in his brief as to the sufficiency of the evidence on this offense is limited to the following:

> Based on the testimony of Carolyn Lazenby, the home improvement contractor's license only applies in certain counties. It also has a limit in which certain jobs may be performed. There was no evidence to substantiate the State's position that [the Defendant] owned or operated a home improvement business.

Again, we are not persuaded. The Defendant proposed performing a $3,600 roofing job for Salter, whom he knew lived in Davidson County. The Defendant clearly was required to be licensed in order to perform such a job. That he did not actually perform the job is immaterial because offering to perform the job is sufficient under the statute. The written proposal is on a Roofing Right form. It is signed by the Defendant. Drafting proposals for home improvement jobs is a significant aspect of operating a home improvement business. Clearly, the Defendant was holding himself out as operating a home improvement business, one that was offering to perform jobs over $3,000 in Davidson County. The Defendant's proposal to Salter constituted a violation of the Act. Therefore, this issue is without merit.

*Sentencing*

The Defendant claims that the trial court abused its discretion in ordering consecutive sentencing and in ordering that the Defendant serve a portion of his sentence in confinement. The State disagrees. We agree with the State.

In making its sentencing determination, a trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2006). The trial judge should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5) (2006).

When the record affirmatively shows that the trial court considered the statutory sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption that the trial court's determinations are correct. See Tenn. Code Ann. § 40-35-401(d) (2006); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Also, when the trial court considered all of the criteria set out in Tennessee Code Annotated section 40-35-210(b), imposed a sentence within the applicable range, set forth its reasons for imposing the particular sentence, and the record establishes that the trial court's findings of fact are adequately supported, we may not disturb the sentence even if we would have preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). When the record does not demonstrate that the trial court gave due consideration to the requisite criteria, our review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. The appealing party, here the Defendant, bears the burden of establishing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts; see also Ashby, 823 S.W.2d at 169.

In its order imposing sentence, the trial court indicated that it considered the testimony at trial and at the sentencing hearing, "the presentence report, the Defendant's criminal history, and the exhibits admitted at the [sentencing] hearing." The court then applied two enhancement factors: the Defendant has "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1) (Supp. 2009), and the Defendant previously had failed to comply with the conditions of a sentence involving release into the community, id. § 40-35-114(8). The Defendant does not challenge the trial court's application of these enhancement factors.

The court ordered consecutive service on the basis that the Defendant was being sentenced "for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(6) (2006). The trial court found specifically that the Defendant was on probation for an offense he committed in Rutherford County at the time he committed the instant offenses. It is clear from the transcript of the sentencing hearing that the presentence report, absent from the record on appeal, set forth the Defendant's criminal history and the dates of his probationary sentence. The trial court stated in its order that it was relying on the presentence report in making its sentencing decision. Where the record on appeal does not contain the relevant information, we presume the trial court's findings are correct. See State v. Estenico Slayton, No. 02C01-9505-CC-00149, 1996 WL 111236, at *4 (Tenn. Crim. App.

-11-

Mar. 14, 1996) (where trial court considered presentence report but neither State nor defendant introduced it into evidence, this Court presumes on appeal "that the trial court's factual findings are supported by the *full* record and are, therefore, correct") (quoting State v. Allen Gary Lord, No. 03C01-9312-CR-00391, 1995 WL 491015, at *9 (Tenn. Crim. App. Aug. 17, 1995)). See also, e.g., State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Accordingly, the Defendant has not demonstrated that he is entitled to relief from the trial court's order of consecutive service of his two sentences.

The Defendant also challenges the trial court's imposition of a period of confinement. In considering whether a period of confinement is appropriate, trial courts are to consider the following factors:

> (A) [Whether] [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (A) - (C) (2006).

With regard to ordering the Defendant to serve 120 days in confinement, the trial court first noted that the Defendant had two previous convictions of violating the Act and one previous conviction of attempting to impersonate a licensed professional. The trial court then ruled that confinement was necessary to avoid depreciating the seriousness of the offenses in this case, noting that "contracting licenses are required to protect the consumer and to ensure a quality of workmanship through regulation and oversight" and that "contractors illegitimately posing as such, do so at peril to the consumer." The trial court specifically found that the Defendant had repeatedly violated the licensing requirements and noted that "the Defendant even continued to pose as a licensed contractor after being informed by the Board for Licensing Contractors ("Board") that he was forbidden from engaging in this type of activity." The trial court also found that the Board had fined the Defendant twenty-five thousand ($25,000) dollars and that the Defendant had failed to pay this fine.

The trial judge also found that confinement was "particularly suited to provide an effective deterrence to people likely to commit similar offenses," noting that "the devastating floods in May of 2010 caused substantial damage to numerous Davidson County residents'

homes" and that "confinement is necessary to deter unscrupulous unlicensed contractors from preying on vulnerable Davidson County residents after this natural disaster." The trial court also found "that less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the [D]efendant," referring to the probationary sentence the Defendant had been serving when he committed the instant offenses.

We discern no error by the trial court in ordering the Defendant to spend 120 days in confinement. The Defendant has demonstrated, repeatedly, his refusal to abide by the laws applicable to home improvement contractors. He also has demonstrated that a sentence of full probation will not deter him from further wrongful conduct. We conclude that the trial court's order of 120 days' confinement is entirely appropriate. Accordingly, the Defendant is not entitled to relief as to this aspect of his sentence.

## Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JEFFREY S. BIVINS, JUDGE

-13-