FILED

10/22/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2021

**STATE OF TENNESSEE v. COREY PAUL TERRY**

**Appeal from the Criminal Court for Knox County**
**Nos. 112847, 95876, 96710        Kyle A. Hixson, Judge**

_____

**No. E2020-01344-CCA-R3-CD**
_____

The Defendant, Corey Paul Terry, pleaded guilty to aggravated burglary in 2010, two counts of aggravated burglary in 2011, and tampering with evidence in 2018. Due to various prior probation violations, the Defendant was serving an effective six years on probation for all the offenses in 2019 when he was charged with violating his probation. Following a hearing, the trial court found that the Defendant violated the terms of his probation, revoked his probation, and ordered him to serve his sentences in confinement. On appeal, the Defendant contends that the trial court lacked substantial evidence to find that he violated the conditions of his probation and that the trial court abused its discretion in sentencing him to confinement. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Whitney M. Collins, Knoxville, Tennessee, for the appellant, Corey Paul Terry.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Kenneth Irvine, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant pleaded guilty in 2010 to aggravated burglary and agreed to a three-year sentence, suspended to two years and three hundred twenty-five days on

probation. In 2011, the Defendant pleaded guilty to two counts of aggravated burglary, for which he received concurrent sentences of three years on probation to be served consecutively to his 2010 sentence. His probation in the 2010 aggravated burglary sentence was reinstated the same day, having been previously revoked. The record contains various violations of probation for these offenses, not all of which are resolved in the record. It appears the Defendant was still serving these sentences in 2018. On April 25, 2018, the Defendant pleaded guilty to tampering with evidence in case number 112847 for presenting a false urine sample, and he agreed to serve six years on probation concurrent with his prior sentences. The same day, his probation in the previous aggravated burglary cases was revoked and reinstated, resulting in him serving six years on probation for all of his offenses. A fourth violation of probation warrant was issued on March 18, 2020, alleging that the Defendant committed the offense of driving under the influence on or about November 16, 2019, which violated rules prohibiting him from disobeying the law, using intoxicants in excess, and engaging in assault, abusive, or threatening or intimidating behavior.

At the revocation hearing, the violation of probation report and the Defendant's driving record were entered as exhibits. The Defendant's driving record reflected offenses ranging from 2005 to 2019, including failures to appear, failures to answer or pay, an accident resulting in property damage, speeding, following too closely, failures to show proof of insurance, and an accident resulting in personal injury.

Tennessee Highway Patrol Trooper Clint McKissack testified that on November 15, 2019, after 9:00 p.m., he observed a vehicle driven by the Defendant partially cross into another lane of traffic and enter a third lane of traffic without signaling first. Trooper McKissack stated that the vehicle then slowed down, causing him to slow down in response. He pulled the vehicle over and approached the vehicle from the passenger side. Trooper McKissack smelled the odor of alcohol as he talked to the Defendant. The Defendant admitted that he had consumed alcohol, but Trooper McKissack could not recall at the hearing whether the Defendant told him the amount of alcohol he had consumed. The Tennessee Electronic Crime Report, which was entered as an exhibit, reflected that the Defendant informed Trooper McKissack that he consumed one beer.

The Defendant performed a series of field sobriety tests, which he failed. Trooper McKissack testified that the Defendant did not perform the "walk-and-turn" test as explained, stepped off the line, missed stepping from heel-to-toe, took an improper number of steps, and stopped walking during one part of the test. During the one-legged standing test, the Defendant could not raise his leg off the ground and explained to Trooper McKissack that he had "equilibrium issues." Trooper McKissack stated that during the finger-to-nose test, the Defendant touched the pad of his finger to his nose rather than the tip of his finger. Trooper McKissack concluded from the Defendant's

performance that the Defendant was intoxicated, and the Defendant refused a blood-alcohol test. The Defendant admitted that he had smoked marijuana earlier that day. A search of the vehicle driven by the Defendant revealed an empty bottle of tequila with a missing lid. Trooper McKissack recalled asking the Defendant about the tequila, and the Defendant responded that he had not consumed "that much." The Defendant was arrested and charged with driving under the influence ("DUI"), violation of the implied consent law, improper lane usage, possession of an open container, violation of the financial responsibility law, and driving on suspended license.

On cross-examination, Trooper McKissack recalled that the Defendant was wearing sandals or flip-flops during the field sobriety tests. He testified that he mistakenly marked on the Alcohol/Drug Influence Report that it was daylight outside. Regarding Trooper McKissack's marking of "sure" during the finger-to-nose test, he testified that it was marked "because [the Defendant] was still reaching that area" but that it did not indicate that the Defendant passed the test. He recalled that the vehicle did not belong to the Defendant, but he did not recall that the Defendant asked for someone to come get the vehicle.

The Defendant's probation officer, Ms. Lakeisha Jones, testified that the Defendant performed "fairly well" on probation, which she described as meaning that he attended appointments, was available for home visits, maintained employment, and only failed two drug screens by testing positive for marijuana in May and July of 2019. She believed that the Defendant would comply with the conditions of probation if the court returned him to probation, and she stated that she would be willing to supervise him again. She testified that the Defendant turned himself in for the present violation upon her instruction. On cross-examination, Ms. Jones conceded that the Defendant being charged with additional offenses while on probation was problematic and that his refusal to take a blood-alcohol test offered by Trooper McKissack violated the conditions of the Defendant's probation.

The trial court credited Trooper McKissack's testimony. The court found that the Defendant admitted to drinking alcohol and smoking marijuana. The court also found that the evidence showed that the Defendant committed the offense of driving under the influence. The court concluded that the Defendant violated the conditions of his probation. The trial court noted that the Defendant's history on probation started with a "three-year sentence that's now going on ten years old." The court considered the Defendant's DUI offense "a very serious one" that "costs thousands of lives across this country every year and across the state." However, the court reserved its decision regarding the Defendant's sentence for program recommendations to be made and for a post-sentence report to be developed. Following the hearing, a post-sentence report was filed. The report reflects that the Defendant was convicted of theft up to $500 in 2005,

possession of a weapon with the intent to go armed in 2009, and "Casual Exchange" in 2010. The report also reflects that the Defendant was employed before being arrested for the conduct underlying his current violation and had a child for whom he owed child support. On August 28, 2020, the court entered orders revoking the Defendant's probation in case numbers 95876, 96710, and 112847, and the court ordered the Defendant to serve his sentences in confinement. We note that the orders reference an August 28, 2020, hearing and state that the court's reasoning for revocation is "more fully set forth in its ruling from the bench." However, the transcript of the August 28, 2020, hearing is not part of the appellate record. The Defendant appeals from the trial court's orders revoking his probation.

## ANALYSIS

The Defendant challenges the trial court's order revoking his probation by alleging that its decision was not supported by substantial evidence and that it erred in sentencing him to confinement. In challenging the trial court's decision to revoke his probation, the Defendant alleges that the court failed to consider audio and video evidence of the traffic stop, which he alleges was withheld from him until after his probation was revoked. He also alleges that his charges resulting from the traffic stop were dismissed at a later time based on the video evidence. The State contends that the trial court properly revoked the Defendant's probation and sentenced him to confinement. We agree with the State.

A trial court has the discretion to revoke probation if it finds by a preponderance of the evidence that a defendant violated the conditions of probation. *See* T.C.A. §§ 40-35-310, -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). An abuse of discretion in revoking a defendant's probation occurs only where there is "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. The trial court determines the credibility of witnesses in probation revocation hearings. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978)). Additionally, the trial court's factual findings carry the weight of a jury verdict on appeal. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005) (citations omitted).

A trial court finding that a defendant has violated the conditions of probation is statutorily authorized to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the Defendant to probation on appropriate modified conditions; or (4) extend the Defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), (c), -310, -311(e)(1); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). In exercising its authority, a trial court has no

obligation to provide a defendant already on probation "'a second grant of probation or another form of alternative sentencing.'" *State v. Tracy Arnold*, No. W2018-00307-CCA-R3-CD, 2018 WL 6266279, at *1 (Tenn. Crim. App., Nov. 30, 2018) (citation omitted).

Here, the trial court did not abuse its discretion by revoking the Defendant's probation. As an initial matter, the Defendant advances the claim that audio and video evidence of his traffic stop was disclosed after the revocation hearing and led to the eventual dismissal of his DUI charge. However, neither the complained of audio or video evidencing the traffic stop nor the order dismissing his DUI charge was presented to the trial court in the revocation proceeding below and such evidence is not part of the appellate record. Accordingly, the Defendant's argument is waived to the extent it relies on evidence not presented below and outside of the appellate record. *See* Tenn. R. App. 13(c) ("The . . . Court of Criminal Appeals may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14."); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to the authorities, or appropriate references to the record will be treated as waived in this court.").

Based on the record before this court, Trooper McKissack testified at the hearing that on the night of November 15, 2019, he observed a vehicle driven by the Defendant partially cross into another lane of traffic and then enter a third lane without signaling first. The Defendant then slowed down, causing Trooper McKissack to slow down as a result. Trooper McKissack pulled the Defendant over and smelled the odor of alcohol while talking to the Defendant. The Defendant admitted that he had consumed alcohol and smoked marijuana earlier that day, and he failed the field sobriety tests conducted by Trooper McKissack. An empty bottle of tequila was found in the vehicle driven by the Defendant. The trial court credited Trooper McKissack's testimony and found that the Defendant admitted to drinking alcohol and smoking marijuana. The court found that the evidence showed the Defendant committed the offense of driving under the influence and that the Defendant violated the conditions of his probation. The Defendant's driving under the influence offense was the basis of the allegations contained in the warrant, namely that the Defendant violated rules prohibiting him from disobeying the law, using intoxicants in excess, and engaging in assault, abusive, or threatening or intimidating behavior. Substantial evidence supported the trial court's conclusion that the Defendant violated his probation. *See Shaffer*, 45 S.W.3d at 554.

Regarding the trial court's determination to sentence the Defendant to confinement, we conclude that this issue is waived. The August 28, 2020, revocation orders reference a second revocation hearing occurring on the same day the orders were entered. However, the transcript of the second hearing is not part of the appellate record,

and we cannot discern the basis upon which the trial court rested its sentencing decision. The appealing party bears the burden of preparing a complete and adequate record for the issues presented on appeal, and the Defendant's failure to include the transcript renders this issue waived. *See* Tenn. R. App. P. 24(b). We presume in the absence of a transcript evidencing the second hearing that the trial court considered the evidence and ruled correctly. *See State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993) ("In the absence of a record adequate for review, this court must presume that the trial judge ruled correctly."). The trial court's decision to sentence the Defendant to confinement was within its authority. *See* T.C.A. §§ 40-35-308(a), -308(c), -310, -311(e)(1). Therefore, we conclude that the trial court did not abuse its discretion.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE