IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 9, 2015

## RONNIE HENRY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08309      Glenn Wright, Judge**

### No. W2014-01786-CCA-R3-PC  -  Filed April 7, 2016

A Shelby County jury convicted the Petitioner, Ronnie Henry, of four counts of aggravated robbery and four counts of robbery, and the trial court sentenced him to seventy years in prison. The Petitioner appealed his conviction and sentence, and this Court affirmed his convictions and remanded the case on a sentencing issue. *See State v. Ronnie Henry*, No. W2006-00344-CCA-R3-CD, 2008 WL 450459, at *5 (Tenn. Crim. App., at Jackson, Feb. 19, 2008), *perm. app. denied* (Tenn. 2008). The Petitioner was resentenced on remand and his sentence was affirmed on appeal. *State v. Ronnie Henry*, No. W2009-00089-CCA-R3-CD, 2009 WL 3103823, at *5 (Tenn. Crim. App., at Jackson, Sept. 28, 2009), *no Tenn. R. App. P. 11 application filed*. In 2010, the Petitioner filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel who filed an amended petition for post-conviction relief alleging that the Petitioner had received the ineffective assistance of counsel. The trial court held a hearing on the petition and denied relief. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Ronnie Henry, Clifton, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts and Procedural History

This case arises from a robbery that occurred at an Enterprise Rental Car Agency store in Memphis, Tennessee. For this offense, a Shelby County grand jury indicted the Petitioner for four counts of aggravated robbery and four counts of robbery.

## A. Trial

In our opinion on the Petitioner's appeal of his conviction and sentence, this Court provided a brief summary of the evidence presented at trial:

Mario Colbert testified that he and a friend, Torrie Lyles, were at the Enterprise location exchanging a rental car. The two men saw Russell Jones, the branch manager, counting money in his office. Lyles told Colbert he was going to call the [Petitioner] and did so. Approximately fifteen minutes later, the [Petitioner] and Vincent Williams came to the Enterprise location. Williams wore a stocking mask, but the [Petitioner's] face was not covered. The [Petitioner] and Williams ordered the people inside the building to get on the ground. Williams was holding a pistol. Colbert and Lyles placed themselves on the floor and pretended to be victims of the robbery. Colbert stated that Russell Jones was robbed, but he did not watch other individuals being victimized. Colbert and Lyles stayed on the scene after the police arrived and continued the ruse of being victims. Later, Colbert met with Lyles, Williams, and the [Petitioner] at the home of Lyles'[s] brother, where the [Petitioner] distributed the robbery proceeds. Colbert said he received "seven hundred and something" but did not know how much was taken or how it was divided.

On cross-examination, Colbert stated that the [Petitioner] and Williams were the only individuals who conducted the robbery. The only weapon he observed was in Williams'[s] possession.

Russell Jones testified that he was the branch manager of the subject Enterprise location in July 2002. Jones knew Colbert as a regular rental car customer and said Lyles would accompany him. Jones was counting the store's cash proceeds when he heard a disturbance in the lobby. The [Petitioner] entered the office and forced Jones to the floor. The [Petitioner] then took the box of cash, Jones'[s] wallet, briefcase, and cardholder. The [Petitioner] attempted to remove a ring but Jones successfully resisted. Jones heard a small girl scream and the girl's mother pleading not to shoot. He stated that he saw two men with guns.

2

Approximately six months later, Jones attempted to identify the masked robber from a photo lineup. No identification was made at that time. Later, he identified the [Petitioner] from a photo lineup as the individual who had robbed him. Jones also identified the [Petitioner] at the preliminary hearing and at trial. Jones did not see the [Petitioner] with a weapon during the robberies.

Naziroddin Kazi was visiting at the Enterprise agency when the robbery occurred. He saw two men running toward the store. They entered the business and ordered those inside to get down. Kazi saw a revolver but did not get a good view of either man. Kazi was placed on the floor with a gun to his head. He was frisked, and his car keys, wallet, and approximately $400 were taken from him.

Brian Denton, the Enterprise assistant manager, was working behind the rental counter when the robbery began. He was commanded to get down by a masked man who was pointing a gun at him. He did not see any others involved in the robbery but could hear other voices making demands. He was asked where the money was kept, and he pointed toward Jones'[s] office. The items taken from Denton were his car keys, a cigarette lighter, and twenty to thirty dollars. He stated that he could hear other victims screaming and pleading.

Frank Scott was an intern at the agency at the time of the robbery. He stated that he had just walked into the building when he was told to "hit the ground." One of the robbers placed a gun to his head and walked him to the office. Scott saw the [Petitioner] take the money from the office. Approximately $3000 was taken from the cash box. Scott was robbed of his cell phone and his wallet which contained approximately thirty dollars. In February 2003, he identified the [Petitioner] from a photo lineup as a participant in the robbery. He also identified him in General Sessions Court and at trial.

Officer Gary Badgett of the Memphis Police Department was an early responder to a radio alert of a robbery in progress. He testified that he spoke with Lyles and Colbert at the scene. He said both men seemed to be smiling and without any anger or nervousness from the event.

Vincent Williams was the only defense witness. He testified that he was in the Shelby County Jail in February 2004 when a guard brought Mario Colbert to his cell. After Colbert introduced himself, Williams asked

him "why did he tell a lie on me." Colbert responded that his "beef" was
with the [Petitioner] and not with Williams.

*Henry*, 2008 WL 450459, at *1-2.

The jury convicted the Petitioner of four counts of aggravated robbery and four
counts of robbery, and the trial court sentenced him to twenty years for each aggravated
robbery as a multiple offender and fifteen years for each robbery as a persistent offender,
for an effective sentence of seventy years in the Tennessee Department of Correction. *Id.*
at *1-5. On appeal, this Court affirmed the Petitioner's convictions but remanded his
case on the issue of sentencing, with instructions to the trial court to specifically address
the weight given to the enhancement factors applied to the Petitioner's sentence. *Id.* at
*5. On remand, the trial court again sentenced the Petitioner to an effective sentence of
seventy years in the Tennessee Department of Correction. *Henry*, 2009 WL 3103823, at
*1. This Court affirmed the Petitioner's sentence. *Id.*

### B. Post-Conviction Proceedings

The Petitioner then filed a petition for post-conviction relief, *pro se*, in which he
alleged that he had received the ineffective assistance of counsel. The post-conviction
court appointed an attorney, and the attorney filed an amended petition, alleging that the
Petitioner had received the ineffective assistance of counsel because: (1) his trial counsel
("Counsel") failed to investigate or question at trial pertinent witnesses; (2) Counsel
failed to subpoena phone records for the Petitioner and Torrie Lyles; (3) Counsel failed to
file "necessary" pre-trial motions; (4) Counsel failed to properly cross-examine and
impeach the State's witnesses; and (5) Counsel failed to object to the State's untimely
filing of the notice to seek an enhanced punishment. The amended petition also alleged
that the Petitioner's due process rights were violated when: (1) the State introduced false
or inaccurate facts at trial; and (2) the trial court allowed inadmissible hearsay testimony
from Mario Colbert.

The post-conviction court subsequently held a hearing, a transcript of which is not
in the record, following which it issued an order denying the petition. The post-
conviction court concluded that the Petitioner had failed to show that Counsel's
representation was deficient and had failed to prove that he had been prejudiced by
Counsel's representation. The post-conviction court also concluded that the Petitioner
had failed to establish that he had been denied due process of law. It is from the post-
conviction court's judgment that the Petitioner now appeals.

After the post-conviction hearing but before the Petitioner's appeal, the post-
conviction court appointed a new attorney to represent the Petitioner for his post-

4

conviction appeal. The Petitioner filed a notice of appeal September 8, 2014. Over the next year, multiple motions and requests were filed by the Petitioner with the trial court, post-conviction court, as well as this Court. Those proceedings were summarized by this Court in a September 24, 2015 order:

On September 16, 2014, the Clerk of this Court received a notice of appeal filed by counsel on behalf of the [Petitioner] in which he challenged the trial court's order denying post-conviction relief. On October 28, 2014, the [Petitioner] filed a motion requesting that he be allowed to proceed pro se on appeal. Shortly thereafter, counsel for the [Petitioner] filed a motion for an extension of time in which to file the transcript in the trial court. On November 10, 2014, this Court entered an order remanding the matter to the trial court regarding the [Petitioner's] request to proceed pro se on appeal. This Court also granted the motion for an extension of time in which to file the transcript. On December 19, 2014, the Clerk of this Court received the trial court's order granting the [Petitioner's] motion to proceed pro se on appeal.

On December 29, 2014, the [Petitioner] filed a pro se motion seeking a second extension of time in which to file the transcript in the trial court. This Court granted the [Petitioner] an extension of up to and including January 26, 2015, in which to file a brief. On January 29, 2015, the [Petitioner] filed a pro se motion seeking a third extension of time in which to file the transcript in the trial court. This Court granted the [Petitioner] an extension of up to and including February 25, 2015, in which to file a brief.

On April 2, 2015, the appellate record was filed but only included one volume of technical record. An order was entered on May 4, 2015, granting the [Petitioner's] request for an extension of time in which to file a brief and instructing the Clerk of this Court to send a copy of the appellate record to the [Petitioner]. On May 29, 2015, this Court entered an order remanding the matter to the trial court on the issue of whether the proceedings had been transcribed.

In the meantime, the [Petitioner] filed a motion in the trial court seeking an order compelling the court reporter to produce the transcript. On June 12, 2015, the State filed a response and attached a "Receipt of Transcript," which noted that an original and copy of the transcripts for each hearing were provided on February 12, 2015. The State also attached an affidavit from Martha A. Jackson, Court Reporter Administrator for the Criminal Court Reporters, dated June 4, 2015, in which Ms. Jackson stated

that the transcripts of various proceedings on six different dates had been prepared and provided to the [Petitioner's] prior counsel "and/or" the [Petitioner's] mother. Finally, the State attached a copy of a letter from the [Petitioner's] prior counsel in which she stated that on December 12, 2014, she gave the [Petitioner] the original and a copy of the transcripts of the hearings that occurred on October 10, 2013, and March 28, 2014. Following a hearing, the trial court entered an order on June 15, 2015, noting that during the hearing, the Appellant "acknowledged on the record that he had received the Post-conviction transcripts." The supplemental record consisting of the [Petitioner's] motion, the State's response, and the trial court's order was filed with the Clerk of this Court on June 17, 2015.

On July 1, 2015, this Court entered an order noting the trial court's findings that the [Petitioner] had been provided with the transcripts and requiring the [Petitioner] to file the transcripts with the trial court clerk within ten days. This Court further ordered the trial court clerk to file the transcripts within ten days of the receipt of the transcripts or a notice that no transcripts had been received. This Court further ordered the [Petitioner] to file an appellate brief within thirty days of the filing of the supplemental record. On July 8, 2015, this Court entered an order granting the [Petitioner's] request for a copy of the supplemental record filed on June 17, 2015.

On July 29, 2015, a supplemental record was filed with the Clerk of this Court. The record consisted only of a notice from the trial court clerk that no transcripts were ever filed in his office. In his "Motion for Consideration of Post-Judgment Facts," the [Petitioner] requested that this Court take notice of a "Motion to Transmit the Record" that he sent to the trial court on June 23, 2015. In the motion, the [Petitioner] requested that the trial court order the trial court clerk to forward the transcripts of the proceedings to the Clerk of this Court.

On August 10, 2015, this Court entered an order noting that the [Petitioner] has a duty to ensure that the applicable transcripts are filed in the trial court. *See* Tenn. R. App. P. 24(b). This Court stated that the [Petitioner] failed to comply with the Tennessee Rules of Appellate Procedure and the orders of this Court. This Court noted that the [Petitioner] attempted to place the blame upon the trial court clerk.

This Court stated that the [Petitioner's] failure to comply with the Tennessee Rules of Appellate Procedure and the orders of this Court has

resulted in numerous delays of the [Petitioner's] appeal. This Court denied the [Petitioner's] request for yet another delay in supplementing the appellate record with the transcript from the post-conviction proceedings and ordered that the appeal proceed with the appellate record that had previously been filed in the trial court. This Court further ordered the [Petitioner] to file a brief by August 28, 2015. The [Petitioner] filed a brief on August 14, 2015.

The [Petitioner] then filed a "Motion for Clarification" regarding this Court's August 10, 2015 order. The [Petitioner] stated that he sent the transcript of the post-conviction proceedings to the Clerk of this Court and that the Clerk received the transcript on August 9, 2015. On August 24, 2015, this Court entered an order stating that the [Petitioner] did not send the transcript of the post-conviction proceedings to the Clerk of this Court. Rather, the [Petitioner] sent one volume of the transcript from his trial in September 2006. This Court noted that the transcript of the [Petitioner's] trial had previously been filed with the Clerk of this Court in connection with the [Petitioner's] direct appeal of his convictions in case numbers W2006-00344-CCA-R3-CD and W2009-00089-CCA-R3-CD. This Court further noted that we may take judicial notice of the archived appellate record from the [Petitioner's] prior appeal. Accordingly, this Court denied the [Petitioner's] "Motion for Clarification."

On August 24, 2015, the [Petitioner] filed a motion to supplement the appellate record with the transcripts proceedings in the post-conviction court from July 17, 2014; August 27, 2014; and December 12, 2014. The [Petitioner] has attached the original transcripts from the proceedings. According to the transcripts, the proceedings on July 17 and August 27 were status hearings, and the proceeding on December 12 was the hearing in which the post-conviction court concluded that the [Petitioner] knowingly and voluntarily waived his right to counsel and elected to proceed pro se on appeal. On September 11, 2015, this Court entered an order denying the motion. The Court stated that the [Petitioner] failed to explain how these proceedings are necessary for adequate review of the issues that he has raised on appeal.

The [Petitioner] now seeks to supplement the appellate record with the post-conviction transcripts and has attached copies of the transcripts to his motion. More than one year has passed since the Clerk of this Court received the [Petitioner's] notice of appeal. The [Petitioner] has been given multiple opportunities to file the transcript of the post-conviction

7

proceedings. Both this Court and the post-conviction court have instructed the [Petitioner] to file the transcript with the trial court clerk. Although the [Petitioner] acknowledged to the post-conviction court that he possessed the transcript of the post-conviction proceedings, he failed to file them with the trial court clerk as instructed. The [Petitioner] filed his brief in this Court on August 14, 2015, and the State filed its brief on August 26, 2015. It is only after briefing has been completed that the [Petitioner] finally produced copies of the post-conviction transcript. It is apparent that the [Petitioner] has engaged in conduct in an effort to delay the resolution of this appeal at every juncture. Based upon the procedural history of this appeal, this Court concludes that the [Petitioner] has failed to establish good cause justifying a granting of this motion and yet another delay in the resolution of this case.

Pursuant to this order, this Court denied the Petitioner's motion to supplement the appellate record.

## II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel at trial and during post-conviction proceedings on multiple bases. The State responds that the record provided by the Petitioner is incomplete, and, thus, this Court "must conclude that the [post-conviction] court's holdings are supported by the record and that the [Petitioner] has waived review of his claims." We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

After multiple grants of extensions to allow the Petitioner to supplement the record with the post-conviction hearing transcript, the Petitioner's motion to supplement the

8

record with the hearing transcript was denied by this Court in a detailed and well-reasoned order dated September 24, 2015. It follows that the transcript is not in the record on appeal before this Court. It is the duty of the Petitioner to provide a record which conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. *See* Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). The Petitioner has failed to fulfill that duty. When presented with an inadequate record on appeal, this Court must presume that the trial court ruled correctly. *See State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993). We conclude that the Petitioner has waived review of his issues on appeal and affirm the post-conviction court's judgment.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE