

FILED

01/17/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 6, 2016

**STATE OF TENNESSEE v. BRYAN CANNADY**

**Appeal from the Criminal Court for Shelby County
Nos. 13-02653, 14-06122  Lee V. Coffee, Judge**

———————————————

**No. W2016-00494-CCA-R3-CD**

———————————————

Bryan Cannady ("the Defendant") pled guilty to one count of theft of property valued at $60,000 or more, three counts of burglary, and one count of vandalism in the amount of $60,000 or more in Case 13-02653 and vandalism in the amount of $1,000 or more in Case 14-06122 and received an effective sentence of ten years in the Department of Corrections.  On appeal, the Defendant claims that the trial court erred in denying probation or an alternative sentence.  Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Benjamin B. Wilkins, Memphis, Tennessee, for the appellant, Bryan Cannady.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant pleaded guilty pursuant to a plea agreement to one count of theft of property valued at $60,000 or more, a Class B felony; three counts of burglary, Class D felonies; and one count of vandalism in the amount of $60,000 or more, a Class B felony, in Case 13-02653 and to vandalism in the amount of $1,000 or more, a Class D felony, in Case 14-06122.  Pursuant to the plea agreement, the Defendant received concurrent

sentences of eight years for each of the Class B felonies and two years for each of the Class D felonies in Case 13-02653. The Defendant also received a sentence of two years for the Class D felony in Case 14-06122 that ran consecutively to his sentences in Case 13-02653, for an effective sentence of ten years with the manner of service to be determined by the trial court.

At a hearing on December 8, 2015, the Defendant and co-defendant Paul Brimhall entered guilty pleas pursuant to plea agreements. Each defendant agreed to pay restitution in the amount of $132,439.51, which amount represented one-half of the total damages to the victim. The State presented the following factual basis for the plea:

> Starting with the offense that [the Defendant and co-defendant Brimhall are] both charged in, 13-02653, if that matter had gone to trial, the State would have shown that on February the 11th of 2015 -- 2013, I'm sorry -- officers entered the enclosed property of PSC Nitrogen, which is here in Memphis, Shelby County. It's a one hundred acre industrial site. There was a Caterpillar that PCS had stored, a front-end loader, in a warehouse. The Defendant [and co-defendant Brimhall] entered that warehouse, stole the Caterpillar, punched the ignition, drove it through the fence, got it stuck in the property behind the business, reentered the property, at which time they entered a compressor building, took another machine that was located there, which was a backhoe. A security guard observed that. [The Defendant and co-defendant Brimhall] attempted to drive that machine out, as well. Also, [the Defendant and co-defendant Brimhall] destroyed the ignition on it trying to get it going.
>
> The security guard saw them [and] [a]ttempted to stop them. During the course of this whole ordeal, [the Defendant and co-defendant Brimhall] also broke into a substation building that was on the property, and they took copper valued at over a thousand dollars ($1,000), which is hard to tell whether stealing the equipment or the copper was the purpose of this. But in any event, [the Defendant and co-defendant Brimhall] took copper, and they took these two pieces of equipment. Also, [the Defendant and co-defendant Brimhall] broke into the three buildings that were located on the property.
>
> …
>
> As to [the Defendant]'s vandalism over a thousand, 14-06122, if that matter had gone to trial, on 6/4 of 2014, William Cannady, who is the

father of the Defendant, filed a vandalism report in regards to his son. [Mr. Cannady][1] said [the Defendant] was on probation and had been exhibiting violent tendencies in the past month. Mr. Cannady stated that [the Defendant] threw a television through the wall, punched numerous holes in the wall, and kicked holes in the garage.

The total damage to the residence was seven hundred dollars ($700). An iPhone was destroyed that was valued at five hundred dollars ($500). [Mr. Cannady] said that when [the Defendant] gets upset, he loses his temper and begins destroying things. In addition, [the Defendant] broke dishes, twelve hundred dollars ($1,200) worth of personal property, and [Mr. Cannady] ended up swearing out a warrant for him at that time.

Following the plea colloquy, the trial court stated "State Probation . . . could only submit a partial report because they couldn't contact you" and ordered the Defendant to cooperate in the preparation of a complete pre-sentence report. The trial court revoked the Defendant's bond and reset the matter for a sentencing hearing.

On February 10, 2016, the day of the sentencing hearing, the Defendant filed a "Petition for a Suspended Sentence." At the sentencing hearing, the Defendant testified that he was charged with assault when he was eighteen and was sentenced to drug court. The Defendant admitted that at the time he was sentenced to drug court he had a drug problem and struggled with marijuana and crystal methamphetamine. He also admitted having positive drug tests during his time in drug court. He participated in Alcoholics Anonymous and Narcotics Anonymous while in drug court and was sober for about six or eight months before leaving the program. The Defendant stated that he failed to complete that program because "[he] ran from it" after getting "into it with one of the counselors."

The Defendant was arrested in Case 13-02653 on February 11, 2013, and remained incarcerated for approximately six months. He was released on August 9, 2013, after Mr. Cannady helped him make the $40,000 bail. The Defendant was rearrested on June 6, 2014, in Case 14-06122 and made bail on June 17, 2014. The Defendant was again arrested on December 8, 2015, for failing to comply with the trial court's order to meet with a probation officer to prepare the pre-sentence report. The Defendant remained incarcerated from December 8, 2015, through the date of the sentencing hearing, February 10, 2016. He stated that he last used illegal drugs a couple of months before he was arrested on December 8. During his incarceration, the mother of

---

[1] Because the Defendant's father was referred to by the trial court as Mr. Cannady we will refer to him by that name also.

the Defendant's two children was murdered. The Defendant's father and mother took care of his two children after their mother's death and while the Defendant was incarcerated. The Defendant did not have a driver's license but stated that if he were granted probation, he would work so that he could earn enough money to get his license and pay the restitution. He stated that he wanted to participate in an intensive outpatient drug program.

On cross-examination, the Defendant admitted that he was in custody at the time of the sentencing hearing because he "didn't show up at the Tennessee Department of Correction to get [his] pre[-]sentence report done." He claimed that he called the probation office and was told he did not need to come in because they already had his information. The Defendant admitted the he had "been getting arrested since [he was] six years old." When asked about four pages of arrests from his pre-sentence report, the Defendant admitted that he had "trouble staying out of trouble." The Defendant admitted that he was rearrested on a bench warrant because he failed to appear for court after being placed on probation for assault in 2004. He also admitted being convicted of a DUI in 2005 and violating probation in 2007.

The trial court questioned the Defendant about information he supplied to the probation officer in preparation of the second pre-sentence report. The Defendant admitted that he told the probation officer that he did not use drugs. The Defendant then stated that he had used a lot of drugs when he was young but drug use had not been a major problem for the last four or five years. The court then read to the Defendant portions of the affidavit provided by Mr. Cannady concerning the vandalism in Case 14-06122 that occurred after the Defendant was released on bail in Case 13-02653. The affidavit stated that the Defendant destroyed Mr. Cannady's iPhone, kicked holes in three doors of Mr. Cannady's house, threatened Mr. Cannady and his wife two or three times, and that the Defendant said that he would burn down their house. Mr. Cannady bought parts to have the Defendant's truck fixed, but after the Defendant installed a few of the parts, the Defendant returned the rest of those parts for money. The Court then read the following from the "Victim's Impact Statement" provided by Mr. Cannady: "You helped [Mr. Cannady] to replace the doors, and he thinks that you are doing better, but he still thinks that you're using drugs." The Defendant responded, "Yes, sir, I mean, I was from time to time."

After arguments by counsel, the trial court made its findings on the record. The trial court noted that the Defendant was eligible for probation under Tennessee Code Annotated section 40-35-303(a) and was eligible for community corrections if the court found that he was not a suitable candidate for probation but had special needs that could be best served in the community. However, the Defendant was not presumptively

considered a favorable candidate for probation because he had been convicted of Class B felonies. The trial court announced that it had considered all of the factors outlined in Tennessee Code Annotated section 40-35-210. The trial court noted that the vandalism valued at $1,000 or more in Case 14-06122, in which the Defendant's father, Mr. Cannady, was the victim, was committed while the Defendant was on bail for Case 13-02653, bail for which Mr. Cannady helped the Defendant secure. The trial court also noted that the Defendant failed to comply with the trial court's order to report to state probation to help with the preparation of the pre-sentence report. The trial court considered the original partial pre-sentence report and the second complete pre-sentence report.[2] The trial court noted that the Defendant told the probation officer preparing the report "that he did not use drugs," but the Defendant testified at the sentencing hearing that he continued using marijuana and crystal methamphetamine and wanted to go to an outpatient treatment facility. The trial court also stated that it had considered the purposes and principles of sentencing codified at Tennessee Code Annotated section 40-35-102, -103, respectively, as well as the statistical data promulgated by the Administrative Office of the Courts.

The trial court found that the Defendant had a long history of criminal conduct or behavior, that past attempts to rehabilitate the Defendant have failed, and that he had previously violated the conditions of diversion. The trial court found that "measures less restrictive than confinement have been applied unsuccessfully" and that incarceration was "particularly important to avoid depreciating the seriousness of this offense" and to deter future crime. At the conclusion of the sentencing hearing, the trial court ordered that the Defendant serve his ten-year sentence in the Department of Correction. This timely appeal followed.

## Analysis

On appeal, the Defendant claims the trial court erred in denying him probation or an alternative sentence. The State claims that the trial court properly sentenced the Defendant to incarceration. We agree with the State.

Two separate pre-sentence reports were prepared by the Department of Correction, made available to the parties, and submitted to the trial court. Relying on the pre-sentence reports, the State put on no additional proof. The Defendant was questioned extensively about the pre-sentence reports on direct examination and cross examination. The trial judge also asked the Defendant numerous questions concerning information contained in the pre-sentence reports. Information in the pre-sentence reports was

---

[2] Neither of the pre-sentence reports was filed as part of the record on appeal.

referenced by the trial court to support the findings of fact used in the imposition of the sentence. However, neither pre-sentence report was included as a part of the record transmitted to this court. The burden of providing a complete and accurate record in this appeal rests upon the Defendant as the appealing party. See Tenn. R. App. P. 24(b). Typically, "[t]he failure to place the pre-sentence report in the record prevents this court from reviewing sentencing issues." State v. Keith Banner, No. 03C01-9701-CR-00039, 1997 WL 789948, at *1 (Tenn. Crim. App. Dec. 23, 1997). "In the absence of a record adequate for review, this court must presume that the trial judge ruled correctly." State v. Ivy, 868 S.W.2d 724 ,728 (Tenn. Crim. App. 1993). Nevertheless, the record contains the transcript from the sentencing hearing in which the Defendant testified concerning the contents of the pre-sentence reports. Because the record, including the Defendant's testimony, is sufficient to facilitate review, we will address the Defendant's issue on its merits. See State v. Thomas Mitchell, No. W2014-02515-CCA-R3-CD, 2015 WL 7509923, at *5 (Tenn. Crim. App. Nov. 24, 2015), appeal denied (Mar. 23, 2016).

When a defendant challenges the denial of probation or other alternative sentence, this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness if that decision is based on a proper application of the purposes and principles of sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012), State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A court only abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Kyto Sihapanya, __ S.W.3d __, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401 (2010), Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In recognition of the limited resources of the state prisons, "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society[,] and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]" Tenn. Code Ann. § 40-35-102(5) (2010).

Tennessee Code Annotated section 40-35-103(1) states that the trial court may order confinement when:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2010). In this case, the trial court properly applied the principles and purposes of sentencing and explained its reasoning on the record. As such, we review the trial court's sentencing decision for an abuse of discretion with a presumption of reasonableness.

The record, including the testimony of the Defendant at the sentencing hearing, fully supports the findings expressly made by trial court. The Defendant has a long history of criminal conduct, including numerous juvenile and misdemeanor convictions and a prolonged history of using illegal drugs. The Defendant has on more than one occasion failed to comply with measures less restrictive than incarceration. This case involved substantial damage to the victims in Case 13-02653 and to the Mr. Cannady, the latter of which was committed while the Defendant was on bail. Confinement of the Defendant "is necessary to avoid depreciating the seriousness of the offense" and "is particularly suited to provide an effective deterrence to others likely to commit similar offenses." As such, we conclude that the Defendant has failed to prove that the trial court abused its discretion in denying an alternative sentence.

## Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 7 -