IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2024

**STATE OF TENNESSEE v. TERRY L. GRAGG**

**Appeal from the Circuit Court for Robertson County
No. 74CC4-2022-CR-483  Robert Bateman, Judge**

_____

**No. M2023-00777-CCA-R3-CD**

_____

The Appellant, Terry L. Gragg, appeals his conviction of aggravated assault for which he received a sentence of four years' probation.  On appeal, he argues that the evidence is insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that he did not act in self-defense.  After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Joseph Atnip, District Public Defender, and Jessica F. Butler (on appeal) and Dan Dalrymple (at trial), Assistant District Public Defenders, for the appellant, Terry L. Gragg.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Robert J. Nash, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 18, 2021, employees of Keith's Tree Service were removing a large tree from the Appellant's neighbor's yard.  The employees placed their trailer at least partially in the Appellant's yard, believing that the neighbor had received permission from the Appellant to do so.  The Appellant had not given his permission, so he chained the trailer to a tree and sat down on it.  When one of the employees, Joshua Moore, attempted to retrieve the trailer using a skid steer, the Appellant pointed a gun at him and told him to "get off his F'ing yard."  The Appellant was charged and convicted of aggravated assault.

At trial, Joshua Moore testified that he worked as an operator for Keith's Tree Service. On the day of the offense, he was removing a large tree at a home in Robertson County. The removal was difficult and involved "top[ping] the tree off as far as [they] could" and "pull[ing] the rest of it down with a machine." Mr. Moore brought the machine, a skid steer, to the home using a gooseneck trailer. Photographs of the skid steer and trailer were admitted into evidence. The skid steer is a four-wheeled vehicle with a grapple bucket for moving materials attached to the front. Mr. Moore explained that the skid steer was "open cab," meaning that it had a roof but not doors. The trailer has a flat surface for materials, with a long arched piece resembling a goose's neck that attaches the trailer to the bed of a truck.

Mr. Moore initially placed the trailer on the property where the tree was located. Later, however, he had to move it toward the back of the property so the tree would not fall on it. At the time, he did not realize the trailer was on the neighboring property. Later in the day, Mr. Moore saw the Appellant come out of the neighboring house and speak to his boss, Brad Keith. Mr. Moore was operating the skid steer and could not hear the conversation over its engine, but he "could tell they were kind of getting loud." Then, the Appellant approached Mr. Moore with his small dog and asked how he was doing. He said "pretty good, sir" and asked how the Appellant was doing. The Appellant responded "not too good," and Mr. Moore said he was sorry to hear that. The Appellant said, "[N]o, you're not. . . . [Y]ou are on my property and you need to get off of it." Mr. Moore told the Appellant that he and his dog needed to get out of his way so he could get off the property. Mr. Moore moved the skid steer and continued working.

Mr. Moore said the Appellant disappeared, then came back outside and sat down on the trailer "[f]or a while." The trial court admitted a photograph of the Appellant sitting on the trailer when the police arrived. After they finished removing the tree, Mr. Keith asked Mr. Moore to get the trailer and hook it back to the truck so they could load the skid steer. Mr. Moore drove the skid steer toward the trailer, and opened the grapple bucket slightly so he could lift the trailer. As he was starting to "get under the trailer to lift it up," the Appellant got off the trailer, came toward him, pulled a gun from a holster on his right side, and pointed it at him. The Appellant was four to five feet from Mr. Moore and told him to "get off his F'ing yard." Mr. Moore feared the Appellant would shoot him. He lowered the grapple bucket and backed up. He got out of the skid steer, grabbed his phone, and called 911. The police arrived shortly after.

On cross-examination, Mr. Moore said the gooseneck trailer was twenty feet long and twenty-four inches tall. The gooseneck piece was about five and a half to six feet tall. The skid steer could reach twelve feet tall and weighed eight to nine thousand pounds. Its maximum speed was around eight to ten miles per hour. On redirect examination, Mr.

Moore clarified that when he was approaching the trailer on the skid steer, he was driving slowly.

Jeffrey Brad Keith testified that he owned Keith's Tree Service and serviced residences in Robertson County. Mr. Moore had been working for him for approximately a year and a half to two years. On the day of the offense, they were removing a large oak tree from the Appellant's neighbor's property. The property was very small. He knew they might have to get on the Appellant's property to remove the tree, and he was under the impression that the homeowner had gotten permission from the Appellant to do so. They parked the trailer in the back corner of the yard to ensure the tree would not fall on it. Mr. Keith believed that "a few feet" of the trailer may have been on the Appellant's property. At some point, the Appellant complained. Mr. Keith "tried to get everything smoothed over with him," but the Appellant was "very aggravated." Mr. Keith asked Mr. Moore to move the trailer, but the Appellant went in his house, got a chain, and chained the trailer to a tree so they could not move it. Mr. Keith walked to the front of the yard and, when he came back, he heard a commotion and learned that the Appellant had pointed a gun at Mr. Moore. He did not see the Appellant point the gun at Mr. Moore, but he did see the Appellant refusing to get off the trailer and chaining the trailer to the tree.

Officer Alyssa Giannantonio, a patrol officer for the Springfield Police Department, testified that she and Officer Tyler Edwards arrived on scene after 6:00 p.m. and spoke with Mr. Moore and the Appellant. The Appellant was sitting on the trailer and explained that he chained it to a tree because it was on his property. He told her he had a firearm and lifted his shirt to show her. He said he had pointed it at Mr. Moore because he was on his property. She arrested the Appellant and seized the firearm, which was loaded. The firearm was admitted into evidence.

Officer Giannantonio's body camera footage was played for the jury and admitted into evidence. The footage shows Officer Giannantonio approaching the Appellant, who is sitting on the trailer. The Appellant says that the man in the orange shirt tried to sneak up behind him and hit him in the head a large pole. The Appellant admits he is carrying a gun and refuses to give it to the officers because he believes he is permitted to have it. When an officer says he cannot point it at the employees, the Appellant says, "Yes, I can when they come on my property because they done been told that they would be trespassing if they come on this property[.]" The Appellant explains that the workers had their machine on his property, damaging his yard, and did not have the "common courtesy" to ask for his permission first. He says he told the owner he did not want them on his property, and that the man in the orange shirt said he was going to kill the Appellant's dog. He says he pointed a gun at the man who came on his property to try to get the trailer, after he had already told the man to stay off his property earlier. An officer tells the Appellant he is going to jail because he pointed a gun at someone, and the Appellant responds, "I was on

my property." When the officer says it does not matter, the Appellant appears shocked and asks, "When they was running at me with a damn backhoe?" After the Appellant is handcuffed, he repeatedly insists that the employees are not permitted to come on his property to get the trailer. The Appellant questions why he cannot protect his own property and dog. The officer says that he can if his life is in danger, and the Appellant responds, "Well hell, the man was coming at me with a damn backhoe."

Officer Giannantonio testified that she was not sure who the Appellant was referring to as the man in the orange shirt. The footage shows Mr. Moore in an "brownish orange color" shirt and another employee in a clearly orange shirt.

Aden Miller testified that he was previously employed by Keith's Tree Service and was working with Mr. Moore and Mr. Keith the day of the offense. Toward the end of the day, the Appellant approached them about the trailer being in his yard, though Mr. Miller did not believe it was in his yard. The Appellant and Mr. Moore, who was in the skid steer, were arguing. Mr. Moore tried to move the trailer, and the Appellant pointed a gun at him. Mr. Miller thought the Appellant was going to shoot Mr. Moore. Mr. Moore and the Appellant continued to argue, and Mr. Miller told Mr. Keith what was happening.

On cross-examination, Mr. Miller said the Appellant was sitting on the trailer at one point, but he walked up to the skid steer as Mr. Moore approached the trailer. Mr. Miller did not hear the conversation between the Appellant and Mr. Moore because he was twenty to twenty-five feet away. He acknowledged that when the Appellant pointed the gun at Mr. Moore, Mr. Moore was not "frozen with fear" but was yelling back angrily. On redirect examination, he said Mr. Moore looked tense.

Devin Truelove testified that he was also previously employed by Keith's Tree Service and was working the day of the offense. He saw the Appellant point a gun at Mr. Moore. Mr. Truelove was right next to Mr. Moore, who looked shocked. Mr. Truelove did not hear the Appellant say anything to Mr. Moore.

The State concluded its proof and the Appellant testified as the sole witness for the defense. Around lunchtime on the day of the offense, the Appellant heard Mr. Keith's crew working. The Appellant's neighbors had told him several weeks before that the crew "might drop some limbs on the property but they would make sure to clean them up." He did not, however, mention anything about parking equipment on the Appellant's property. The Appellant spoke with Mr. Keith and requested that they leave his property. The Appellant later saw Mr. Moore driving the skid steer on his property and "tearing the yard up." He told Mr. Moore he was trespassing and needed to leave. Mr. Moore "just sat there" and the Appellant said, "[W]ell I don't hear it starting up and leaving." Mr. Moore

responded, "[W]ell, I might run over you or your dog," which the Appellant thought was "sort of threatening." Mr. Moore left his property.

The Appellant went back inside his house, but returned outside and sat on the trailer, which was entirely on his property, for "[m]aybe an hour" playing games on his phone. The trailer started moving, and he turned around and saw a skid steer "picking the tongue up of the gooseneck." He jumped off because the gooseneck piece was "moving south towards [his] head," though it was not moving very fast. The skid steer was about five or six feet from him and was also moving in his direction. He stepped around where Mr. Moore could see him and "pulled [his] pistol." The Appellant believed his life was in danger. When asked why, he responded, "Well, earlier he had said that he might run over me and he came back, I mean – I told him he was trespassing and not to come back and if somebody tells me that, I ain't going to come back unless it is for ill something, you know?" The Appellant never intended to shoot Mr. Moore and only wanted to "[a]lleviate the threat."

On cross-examination, the Appellant said he was not armed the first time he went outside and spoke to Mr. Keith. He was armed when he returned outside because he had gotten dressed and "put [his] pistol on like [he] always [does]." He acknowledged he chained the trailer to a tree and claimed he did so because he wanted to see what would happen when they tried to pull it off. When he pointed his gun at Mr. Moore, Mr. Moore dropped the trailer and backed up the skid steer. He said that the man in the orange shirt that he mentioned on the body camera footage trying to hit him with a pole was not Mr. Moore. When asked whether he could have walked away when he jumped off the trailer, he said he could not outrun the skid steer.

The jury convicted the Appellant as charged of aggravated assault. The trial court imposed an agreed upon sentence of four years' probation. The Appellant filed a motion for new trial challenging the sufficiency of the evidence, which the trial court denied. This timely appeal followed.

## ANALYSIS

The Appellant argues that the evidence is insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that he did not act in self-defense. He contends that the proof at trial established that he drew his weapon based upon a reasonable belief that Mr. Moore returned to his yard with an intent to harm him. The State responds, and we agree, that the evidence is sufficient.

When evaluating the sufficiency of the evidence, this court must determine "whether 'any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because a guilty verdict removes the presumption of innocence and imposes a presumption of guilt, the Appellant bears the burden of showing why the evidence is insufficient to support the verdict. Id. (citing State v. Rice, 184 S.W.3d 646, 661 (Tenn. 2006)). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). The jury evaluates the credibility of witnesses, determines the weight given to witnesses' testimony, and reconciles all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

As convicted in this case, aggravated assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury" and the act "[i]nvolved the use or display of a deadly weapon." Tenn. Code Ann. §§ 39-13-101(a)(2), 39-13-102(a)(1)(A)(iii). Because the trial court found that self-defense was fairly raised by the proof, the State was also required to prove beyond a reasonable doubt that the Appellant did not act in self-defense. State v. Benson, 600 S.W.3d 896, 903 (Tenn. 2020). The applicable statute provides:

> (2) Notwithstanding § 39-17-1322, a person who is not engaged in conduct that would constitute a felony or Class A misdemeanor and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
> (A) The person has a reasonable belief that there is an imminent danger of death, serious bodily injury, or grave sexual abuse;
>
> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
>
> (C) The belief of danger is founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(b)(2) (2021). "[W]hether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact." State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (citing State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)).

The evidence is sufficient to support the Appellant's convictions because a rational jury could have rejected the Appellant's self-defense claim. Viewed in the light most favorable to the State, the evidence established that the Appellant did not honestly believe that he was in imminent danger of death or serious bodily injury. The evidence clearly established that the Appellant was angered by the employees and their trailer being on his property. After confronting both Mr. Keith and Mr. Moore, he chained the trailer to a tree, sat down on it, and waited. When Mr. Moore tried to retrieve the trailer, the Appellant pointed a gun at him and told him to "get off his F'ing yard." Though the body camera footage shows the Appellant mentioning Mr. Moore coming at him with the skid steer, it also shows the Appellant repeatedly emphasizing that he was trying to protect his property. When officers told him he could not point the gun at the employees, he responded, "Yes, I can when they come on my property because they done been told that they would be trespassing if they come on this property[.]" Based on this evidence, a rational jury could have found that the Appellant did not point his gun at Mr. Moore because he was in danger, but because he was angry that Mr. Moore was on his property.

Even if the Appellant honestly believed that he was in imminent danger of death or serious bodily injury, a rational jury could have found that his belief was not reasonable. The Appellant testified that the skid steer was moving toward him and the tongue of the gooseneck trailer was moving toward his head. Given Mr. Moore's threat to run him over earlier in the day, he believed his life was in danger. This testimony, however, conflicted with Mr. Moore's testimony. Based on Mr. Moore's testimony, the Appellant was not in any danger. Mr. Moore testified that he had not threatened the Appellant earlier, he had just told him that he needed to get out of the way so he could drive the skid steer off of the Appellant's property. Mr. Moore said when the Appellant pointed the gun at him, he was driving the skid steer toward the trailer but had not yet begun to lift it. Therefore, the trailer was not moving. Mr. Moore also testified that though the skid steer was moving toward the trailer, where the Appellant was sitting, it was moving slowly. The jury resolved this conflicting testimony in favor of the State, and we will not disturb its credibility determinations. See Campbell, 245 S.W.3d at 335. The evidence is therefore sufficient to support his conviction of aggravated assault.

## CONCLUSION

Based on the above reasoning and authority, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE

- 7 -