IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2024

**STATE OF TENNESSEE v. RENARDO DIXON**

**Appeal from the Criminal Court for Shelby County
Nos. C2102587, 21-01535  Paula L. Skahan, Judge**

_____

**No. W2023-00823-CCA-R3-CD**
_____

The Defendant, Renardo Dixon, pled guilty in the Shelby County Criminal Court to aggravated assault and kidnapping, both Class C felonies, in exchange for concurrent sentences of eight years at 30% release eligibility, with the service left to the trial court's determination. At the conclusion of the sentencing hearing, the trial court denied the Defendant's request for probation and ordered that he serve his sentences in the Tennessee Department of Correction consecutively to his sentence in a prior case in which his probation had been violated. On appeal, the Defendant argues that the trial court erred by denying his request for probation. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JILL BARTEE AYERS, JJ., joined.

Paul K. Guibao, Memphis, Tennessee (on appeal) and Shae Atkinson, Memphis, Tennessee (at hearing), for the appellant, Renardo Dixon.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Steve Mulroy, District Attorney General; and Tanisha Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

On July 15, 2022, the Shelby County Grand Jury returned a three-count indictment charging the Defendant in count one with the attempted first degree premeditated murder of the victim, Terrance Barbee, and in counts two and three with the especially aggravated kidnapping of the victim. On March 1, 2023, the Defendant pled guilty to the lesser offenses of aggravated assault in count one and kidnapping in count two, both Class C felonies, in exchange for concurrent out-of-range sentences of eight years at 30% as a Range I offender. Pursuant to the terms of his plea agreement, count three was nolle prosequied. The prosecutor recited the following factual basis for the pleas at the guilty plea hearing:

> Had this matter proceeded to trial, the State's proof would have been on Tuesday, May 26th, 2020, Memphis police officers responded to a stabbing and kidnapping call that occurred [on] Rosewind Drive.
>
> [The victim] advised that he was at his home when a red Nissan Rogue arrived, and a male he knows as Boo got out of the car with Boo's girlfriend. They were armed with handguns and ordered [the victim] to get into the Nissan Rogue. [The victim] entered the rear seat of the Nissan Rogue and Boo also got into the back seat with him. While - - and Boo was later identified as [the Defendant].
>
> While driving down Shelby Drive, [the victim] was able to jump out of the rear passenger side of the Nissan Rogue, and on the way out he was stabbed by [the Defendant] in his lower back with a knife.
>
> [The victim] provided a picture that he copied off [the Defendant's] Facebook page, Boo Live.
>
> On July 7th, 2020, [the victim] came to Ridgeway Station and viewed a six-person photographic display. He picked [the Defendant] out of that lineup as the person responsible for his kidnapping and stabbing.

The prosecutor stated that the State would be entering an order for a presentence report following the entry of the Defendant's pleas, and that the Defendant would be petitioning for a suspended sentence at the later sentencing hearing.

At the May 4, 2023 sentencing hearing, the Defendant testified that he accepted responsibility for his actions and realized that it was his own behavior that caused him to currently be in jail. He stated that his entire family lived in Memphis, including his mother, father, grandmother, two sisters, and brother, as well as his ten-year-old son, who lived with his son's mother. If the trial court granted him probation, the Petitioner planned to live in his grandmother's home with his grandmother, father, mother and brother, go back to school to obtain his GED, find a job, and "get on [his] feet" so that he could eventually find his own place to live. The Defendant testified that none of the family members who lived with his grandmother were involved in criminal activity or had any pending criminal charges, and that it would provide a good environment for him. He described his grandmother, in particular, as someone who was a positive influence in his life, always exhorting him to go to work and to school and regularly providing him with Bible scriptures to read. The Defendant testified that before his arrest in the instant case, he had worked for approximately two or three months as a dishwasher at Cracker Barrel. He said that he was working at the time of the instant offenses, and explained the offenses as having occurred when he "end[ed] up at the wrong place at the wrong time." If granted probation, he intended to get a better job at a warehouse called "Pro Logistics" and work on the weekends for his stepfather, who owned his own tire shop.

The Defendant testified that he had been incarcerated for the past twenty-nine months, that he had witnessed people in the jail fight and get stabbed, and that jail was not where he wanted to be. He was therefore asking the trial court "for a second chance [at] mercy and forgiveness." He stated that he realized that he would end up back in jail should he violate any of the terms of probation and that was something that he did not want to happen. He testified that he had not had any disciplinary write-ups or infractions during his period of incarceration, and that he had earned certificates of completion for four courses: Thinking for a Change, Anger Management, Relapse Prevention, and Victim Impact. In addition, he had attended mental health classes.

The Defendant testified that the Victim Impact course involved talking "about being . . . a victim of a crime" and said he "would not want [his] family or [him]self to be a victim of crime or have any problems with anyone because it's not right" and "becoming a victim of a crime, it will leave you in a place like this and [he did not] want that." He testified that the Thinking for a Change course taught him to think before acting, that he learned to focus and to avoid former bad habits in the Relapse Prevention course, and that he learned to set boundaries and to count to ten in the Anger Management course. He testified that he attended mental health classes during the time that he was incarcerated "out at the penal farm[,]" and that those classes involved getting along with others and talking about "family, [their] charges or whatever." The Defendant testified that he was currently taking 50 milligrams of Zoloft daily, which helped him to sleep and to think. He said he was not

- 3 -

taking Zoloft at the time of the offenses. If granted probation, he would continue to take his medication on a regular prescribed schedule.

The Defendant testified that he had looked into enrolling in a reentry program, which he thought he really needed. He said that reentry programs helped individuals obtain their birth certificates, get their identification, locate and enroll in group programs, and find a job. He stated that he had also investigated the Excel program, which would help him obtain his GED so that he could work on earning a forklift license and possibly his "CDLs."

On cross-examination, the Defendant acknowledged that he had been placed on diversion in 2015 for a marijuana charge and had violated his diversion by picking up another marijuana charge. He further acknowledged that he "picked up a robbery charge after that[,]" to which he had pled guilty, and for which he had received a probationary sentence. He agreed that the facts of that case involved his having gone through a victim's pocket while another individual held the victim at gunpoint. He conceded that the same trial judge who was presiding over the instant case had ordered him to obtain his GED as a condition of his probation in the previous case, but that he had not complied. He stated that he had begun GED classes but was forced to stop attending because of transportation problems. He acknowledged that, at the time of the instant offenses, he was on probation from not only the robbery case but also from a domestic assault case, and that his probation violation in those cases was the reason that he was currently in jail.

When asked for the facts in the instant case, the Defendant responded that he and the victim "had a[n] accident[,]" or a "fight over some money[.]" He then described it as an "altercation, a fight that broke out." He stated that he never kidnapped the victim, but that he wanted "to take responsibility for [his] own actions." He denied that he stabbed the victim and suggested that the puncture wound the victim sustained to his back was caused by the victim's having struck his back on something as he and the victim were "tussling." When asked how the victim had his ankle run over if he and the victim had merely been fighting, the Defendant replied: "Because when we got in the car, he agreed to go to his girl to get the money from his girl." The Defendant explained that the victim's girlfriend had owed him money for some drugs she had gotten from him. He denied that he had been selling drugs, that he drove the victim around searching for the victim's girlfriend, or that he threatened the victim. The Defendant testified that being granted probation would provide him with a "fresh start," get him out of jail, and provide him the opportunity to show the trial court and "everybody else" that he could "do better with [his] life."

At the conclusion of the hearing, the trial court denied the Defendant's request for probation and ordered that he serve his effective eight-year sentence in the Tennessee Department of Correction. In so doing, the trial court noted the Defendant's offenses

involving violence, his past failures at probation and diversion, and the fact that he scored as a high risk for violence on his validated risk and needs assessment that was included as part of his presentence report. The trial court's ruling states in pertinent part:

> But as the risk and needs assessment shows on page 10, I'm sorry, the validated risk assessment, risk score of high for violence, high for violence. That's your - - that's what your history indicates here. Again, you were placed on diversion your first one with criminal justice system back in arrest 2014 for drugs, violated probation. You know, two convictions for drugs - - I'm sorry, three convictions for drugs. Then the robbery arrest, domestic violence arrest, placed on probation for both of those out of this courtroom, violated by picking up this very, very serious charge involving someone who if I could follow his girlfriend owed you for drugs. So you kidnap him in a very, very ugly scene, situation came out of that and as I wrote down what you said earlier in the hearing, "wrong place wrong time."

> I appreciate the fact that you've been involved in these programs at the workhouse, Thinking for a Change, Victim Impact. But when you were talking about victim impact, you were talking about yourself and your family being victims of crime mostly, not the victim in this case and how it affected him, how it's ruined his ability to make a living as a mechanic as he testified in front of you a few years ago. . . .

> Efforts at rehabilitation have been attempted unsuccessfully with you. There's a very strong need to deter your behavior, and I'm sorry, but the petition to suspend sentence is denied.

## ANALYSIS

The Defendant contends on appeal that the trial court erred in denying his request for probation. He asserts that he "showed his sincere efforts at rehabilitation" and "detailed a plan for maintaining a societally acceptable and legal lifestyle upon his release[,]" notes that there was no victim impact testimony presented at the sentencing hearing, and suggests that the trial court's denial of probation was due to the trial court's having been "taken back" when it realized by its review of the presentence report that the Defendant had previously been on probation in a prior case before the trial court. The State argues that the trial court acted within its discretion in imposing a sentence of confinement.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v.*

*Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, the trial court is to consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the mitigating and enhancement factors, (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, (7) any statement by the Defendant in his own behalf about sentencing, and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. *See id.* § 40-35-102(6).

The following sentencing considerations in Tennessee Code Annotated section 40-35-103(1) should be used to determine whether alternative sentencing is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. *See id.* § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. *Id.* § 40-35-102(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the

trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id.*

As an initial matter, we note that the presentence report, which the trial court obviously considered in its sentencing determinations, was apparently not introduced by either party as an exhibit to the hearing, nor is it included in the record on appeal. "When a party seeks appellate review[,] there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993); Tenn. R. App. P. 24. Moreover, "[i]n the absence of a record adequate for review, this court must presume that the trial judge ruled correctly." *State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993) (citation omitted). Because the Defendant admitted to the essential information contained in the presentence report, we conclude that, in this case, the record is adequate for us to conduct a meaningful review despite the Defendant's failure to include the presentence report in the appellate record.

However, based on our review, we agree with the State that the trial court acted within its discretion in denying the Defendant's request for probation. The Defendant acknowledged he had prior failed attempts at sentences other than incarceration, and that he was on probation for crimes of violence at the time he committed the instant offenses. He also acknowledged that he failed to comply with the condition of his prior probation by not obtaining his GED. Although the Defendant asserts in his brief that he has accepted responsibility for his actions and demonstrated remorse, his testimony at the sentencing hearing, in which he minimized his actions and attempted to shift blame to the victim, demonstrates otherwise. Accordingly, we affirm the sentences as imposed by the trial court.

## CONCLUSION

Based on our review, we affirm the judgments of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE
